DICK et al. (slaves) *v.* THE STATE, 30 Miss. Rep., 593.

### HOMICIDE.

In order to render the confessions of a prisoner competent evidence against him, it is not necessary to inform him of his rights, or that he is not bound to confess.   All that is necessary is that they must be free from compulsion.

It is too late, after a confession has gone to the jury without objection, for the prisoner to object and move for its exclusion.

A party may be convicted of a crime upon the testimony of his accomplice.   His connection with the crime goes to his credibility, but does not affect his competency, and the jury are the exclusive judges as to the degree of weight that his testimony is entitled to.

Error to Yazoo circuit court.   HENRY, J.

The proceedings in the court below, necessary to be stated,

are fully set out in the opinion of the court, except the testimony of witness, Peter (a slave). This witness, on the part of the state, testified as follows: "That on the night his master was killed, he went with the prisoners to the house—they made him go with them. Henry went in first, Dick next, and Aleck stayed in the gallery. When they went in, his master (Theophilus Pritchard) jumped out of bed; that Henry caught hold of him, and threw him on the floor, and choked him until he got tired, then got hold of him (witness) and pulled him down, and made him take hold of his master's neck. He, witness, choked his master, but the breath was nearly out of his body, and he was nearly dead when he first took hold of him. They then took his master up and put him in the bed, laid his hands by his side, and covered him up. This was about two years ago."

*George B. Wilkinson* and *W. E. Pugh* for plaintiffs in error.

The first error assigned is: The court who tried this cause, erred in overruling the motion to exclude from the jury the evidence of Julius Johnson and Tilman Johnson.

1. Because the confession of each of the prisoners made after the deed was done, was permitted to go to the jury, as evidence to prove the guilt of the others. The confessions or admissions of an accomplice in a felony, made after the commission and completion of the offense, are not competent evidence against a prisoner, even though a previous conspiracy and combination between the prisoner and the accomplice to commit the felony, has been proven. Hunter's Case, 7 Gratt. 642; 2 Russ. Crimes, 652, n. 2; Stark. Ev. 31.

2. Because these confessions were not voluntarily made, or obtained, even had the prisoners been freemen, much less, as they are slaves, and perfectly under the control of those surrounding them, and in whose custody they were. The man who is born a slave, raised a slave, and knows and feels his destiny and lot is to die a slave; always under a superior, controlling his actions and his will, can not be supposed to act or speak voluntary and of his free-will, while surrounded by fifteen or twenty of those to whom he knows he is subservient, and by the law bound to obey. Such a being, in his physical, moral, and intellectual faculties, is, and must ever be, more or less subservient

to the will and wishes of the freeman having the control over him; and when in chains, and informed that it would be better for him to confess, is under duress. Place man physically and morally in perpetual slavery, and how, I ask, can the intellectual man be free? Perpetual slavery and free-will are incompatible with each other. They can not exist in the same being at the same time. By our state, the same evidence, and the same rules of law, that govern the trial of a freeman, govern the trial of a slave. If a freeman make confessions while under duress, or after being induced so to do by threats, fear, promises or hope, such confessions can not be given as evidence against him; and the same law that governs the trial of the freeman, governs the trial of the slave.

It will be borne in mind that the prisoners made no confessions until late in the evening, and some of the white men had been there all day; and among the rest, the two Johnsons (the witnesses). Nor did they confess until they were surrounded by eighteen or twenty white men, and after being arrested and chained, and told to confess; it was better for them. Rex v. John Wilson, 1 Holt, 597; 3 Eng. Com. Law R., 190; 2 Stark. Ev., 27, note n; 2 Russ. Cr., 645; Peter v. State, 4 S. & M., 31; Van Buren v. State, 2 Cushm., 512; Rex. v. Stokes, 1 Am. Law Reg., 435.

The court erred in granting the third instruction asked for by the state. Because it does not state if prisoners combined, confederated, or agreed to kill, etc., or some like words; it was not necessary for them all to be present, etc. The design and agreement beforehand is wanting. The instruction is in the words "ready and able;" the word *willing* should have been added.

The court erred in granting the second and fourth instructions for the state; because neither of them confine the jury to the evidence before them as jurors, but permit them to take into consideration their private knowledge, to exercise any outside prejudice, and to carry with them into their retirement, all rumors they may have heard before they were sworn to try this cause. Savenbury v. Harper, 5 Cushm. R., 299, determined by this court in 1854, is in point.

The court erred in refusing the sixth instruction asked by prisoners.

It does not appear that the negro boy, Peter, was either sworn or charged before he was permitted to testify. Hutch. Code, 521, § 59.

The record does not show that the prisoners were valued before sentence of death was pronounced upon them. Hutch. Code, 540, § 2, art. 20.

The judgment of the court is against Pritchard for costs, the record showing that he was dead at the time. It is, therefore, so far, void, and being an entire thing, if void in part is void *in toto.*

*D. C. Glenn,* attorney general.

1. The confessions in evidence were freely and voluntarily made. Each one made separate confessions, and each confession was properly received.

2. There is no point raised on the instructions needing notice, save the allegation that they do not confine the jury to the evidence. I think this is a mistake. The first instruction does confine them, and it applies to all save the last instruction, which renews the restriction.

3. It need not appear that Peter was sworn or charged before testifying. This court presumes he was.

4. In Jack's case, Miss. Rep., the court say, the assessment of a condemned negro has nothing to do with the record of his conviction.

5. The question of costs raised, has nothing to do with the guilt or innocence of these appellants.

SMITH, C. J. :

The plaintiffs in error were indicted and tried in the circuit court of Yazoo county; and convicted of the murder of Theophilus Pritchard. A motion was made for a new trial, which was overruled. Whereupon the prisoners excepted, and filed their bill of exceptions, which contains the evidence adduced on the trial.

The first exception taken to the judgment below is, that the court erred in overruling the motion of the prisoners, " to

rule out all the testimony as to the confessions of the prisoners."

To determine the validity of this exception, we must refer to the evidence, as it appears in the bill of exceptions.

Julius Johnson, the first witness called for the prosecution, testified, that " on the morning of the day of the death of Pritchard, the boy Aleck came to his house, and informed him that his master was dead ; that he went over about an hour by sun in the morning, and found Pritchard in bed, with his hands down on his sides, lying on his back, dead ; that from appearances, he had not been dead long : some warmth about his heart. Afterwards, when a *post-mortem* examination was had, there appeared bruised blood on one side of the neck about as large as a dollar, and something like the print of fingers on the neck ; gave no other views or evidence of violence on the body except a scratch or two on the leg, and one of his toe-nails was loose ; that the coroner arrived there in the evening, about an hour by sun ; that there were some sixteen or twenty white men there before any attempt was made, to his knowledge, to get any thing out of the negroes ; or, if so, he thinks they made no confessions until after the coroner arrived ; then Dick confessed to him that he knew his master was killed ; that the boys had laid this plan to kill him ; and that he agreed to it ; but he remained outside the door while the others went in.   This confession took place in the yard."

Aleck confessed " he helped kill his master ; said they went in, and his master was asleep ; he woke up and jumped out of bed ; he and the other boys caught him and threw him on the floor, and choked him until he was dead."

Tilman Johnson testified, that he went to Pritchard's room in the morning, and remained there all day ; that in the afternoon all the negroes, or nearly all, except Dick, were in a room together.   In talking to the negroes about the death of their master, he said to them all, that it would be better for the guilty ones to confess, that the innocent might not be punished ; that when he made this remark, Aleck and Henry were chained, and he thought Henry was asleep ; but he jumped up, and said, " it was no use to deny it any longer ; and stated that he and the

other boys went in and killed their master, by choking him, and then laid him on the bed, as he was found." The coroner and jury were then in the other room of the house, and the negroes were in charge of one, in whose possession the coroner had placed them.

No warning of any kind whatever, was given to the prisoners of their rights,—and that they were not bound to make any confession by which they would criminate themselves.

The confessions of the prisoners, Dick and Aleck, were not made before an officer during the course of a judicial examination. They were made to the witness, with whom they happened to be present. No effort was made by the witness, or any one else, by threats or promises, to induce these parties to confess. The confession of each appears to have been perfectly voluntary. Under these circumstances, it was not necessary, in order to render their confessions competent evidence against the party making them, that they should have been informed of their rights, or warned that they were not bound to make any statement which would tend to inculpate themselves. As evidence, therefore, against the party making them, these confessions were clearly competent.

According to the rule recognized in the case of Peter v. State, 4 S. & M., 31, and in that of Van Buren v. State, 24 Miss., 512, the confession of the prisoner, Henry, was incompetent; and doubtless would have been excluded, if it had been objected to when offered on the trial. But no objection appears then to have been made to its introduction as evidence. It was too late after the confession had gone to the jury, without exception, for the prisoner to object, and move for its exclusion. And, moreover, the force of the exception, if it were conceded that it was made at the proper time, is materially weakened, by the subsequent action of the court.

The judge, at the instance of the defendants, charged the jury, " that the confessions of the prisoners, made while in the custody of the coroner, or his appointees, are not evidence, unless they were first warned that they were not bound to criminate themselves."

If the jury observed this instruction in estimating the guilt

of the accused parties, they not only excluded from their consideration the confession of the prisoner Henry, which in our opinion was incompetent evidence, but likewise the confessions of Dick and Aleck, which we think was proper evidence in the cause; as it was distinctly stated by all the witnesses, that no such warning or caution was given to the prisoners.

Assuming that this instruction was correct (and no objection as to its legality can be heard as coming from the parties at whose instance it was given), and that it was obeyed by the jury, let us see whether there was not other evidence before them which fully sustains the verdict.

The testimony of the witness Peter, who was jointly indicted with the prisoners and acquitted on a former trial, is direct and clear, and establishes every material fact necessary to be proved, in order to fix the guilt of the accused.

Upon his examination, this witness confessed that he was an accomplice in the commission of the crime. This, however, did not disqualify him as a witness; and as to his credibility, the jury were the exclusive judges. As they gave credit to his testimony, we are bound to hold that the verdict was sustained by sufficient evidence, independent of the confessions of the prisoners.

There are other objections made to the judgment, but as, in our opinion, they are unimportant or untenable, we deem it unnecessary to notice them specially

Judgment affirmed.

HANDY, J.:

I concur in the above opinion.

FISHER, J.:

I disagree as to so much of the opinion as holds, that the judgment must be affirmed as to the slave Henry.