WEATHERFORD *v.* STATE.

(In Banc.   Oct. 24, 1932.)

[143 So. 853.   No. 30156.]

A. Q. Broadus, of Purvis, for appellant.

**W. D. Conn, Jr.,** Assistant Attorney-General, for the State.

Argued orally by **A. Q. Broadus**, for appellant, and by **W. D. Conn., Jr.**, for the State.

**Ethridge, J.**, delivered the opinion of the court.

The appellant was tried and convicted for the murder of John Dearman and sentenced to be hanged.

About eleven years prior to the killing, the appellant went to live with Dearman remaining there a number of years. In 1931, the appellant left Dearman's home and made a crop near Wiggins in Stone county, but returned to the home of the deceased in the fall of 1931. Dearman, the deceased, was killed on the night of December 26, 1931, while sitting before his fire in a cane bottomed chair near a window, in such a position that his right side was visible from the outside of the window. Two shots were fired from the outside into the head of the deceased entirely blowing away one side and part of the top of his head, the brain being dislodged from the head and scattered, part being on the window sill. The deceased never moved from his position after he was shot, and was in this condition when several witnesses arrived.

The wife and daughter of the deceased were in the room at the time of the shooting, but neither of them were introduced as witnesses in the case.

The sheriff of Lamar county was called shortly after the killing, and, after making a preliminary investiga-

tion, went to the home of Babe Weatherford, the brother of the appellant, finding him there in bed, and arrested him, telling him he was arresting him in connection with the murder of John Dearman, and the only remark made by appellant was that John Dearman was a good friend of his. The appellant was taken to the Hattiesburg jail, then to the jail at Purvis, and finally to the jail at Poplarville, in Pearl River county.

In the meantime, the sheriff made some investigations and learned that the appellant had borrowed a 12-gauge shotgun from a party at Sumrall on the morning of December 26th, and also that appellant had been to the Hawkins Hardware Company in Hattiesburg, during the day, and had purchased four shells loaded with birdshot, and two loaded with buckshot. The shot with which the deceased was killed were buckshot. The sheriff located buckshot in different places in the room where deceased was killed. The sheriff procured the gun which had been borrowed by appellant, and then, with others, brought the appellant to the sheriff's officer about 9:30 P. M., and questioned him as to his movements during the day, and appellant admitted that he killed John Dearman.

Subsequently, and before the trial, a new sheriff was inducted into office, and, while transporting the appellant from the Pearl River county jail to the Lamar county jail, asked the appellant, in substance, whether he was going to plead guilty or fight the case, to which the appellant replied, in substance, that there was no use in lying about it, that he killed John Dearman.

When these statements of the sheriffs were offered in evidence, the appellant objected; but the sheriff and others testified that there were no threats made and no hope of reward held out, and that the appellant's statements to the questions asked him were voluntarily made without fear of punishment, or hope of reward.

At that time, there was no offer on the part of the appellant to produce any testimony in his behalf upon this

proposition; but, afterwards, the appellant went upon the stand and testified, in detail, as to the circumstances of the killing, stating that he killed Dearman, but gave as a reason for so doing, that he and Dearman had been, for many years, engaged in stealing various things in the community from neighbors, and that he desired to abandon this stealing enterprise, and that Dearman objected to his doing so, and threatened him with violence if he did so. He further testified that he left Dearman's house in the early part of 1931 in order to get away from the deceased and to abandon this stealing; that the deceased had written him letters requesting him to return, and promising that he (deceased) would not insist upon the appellant going into any more stealing enterprises. Appellant further testified that after he did return, the deceased had picked out some hogs belonging to another party and desired the appellant to go with him and assist him in stealing them; that he (appellant) remonstrated and refused to do this, and that the deceased threatened him, stating that if he did not do so, he would kill him, and gave him a certain time in which to make up his mind; and that the appellant, if he did not agree to assist the deceased, would live no longer than the date mentioned.

Appellant admitted that he went to Sumrall on the morning of December 26th; borrowed a gun, but stated that he wanted the gun not to go hunting, but to kill the deceased with; that he fired some of the birdshells purchased to test the gun; and that he killed the deceased with buckshot as above stated.

It was contended by the appellant and some witnesses introduced by him that he was not entirely normal; that he had been struck on the head, some years before the killing, by some machinery connected with a skidder, being badly hurt in his head; and that since that time, at periods, he was not normal mentally. Other witnesses testified that he was knocked down on one occasion sub-

sequent by a man, and that the wife of the deceased was present and took the part of the appellant, using expressions of endearment and sympathy.

It was further testified that the neighbors heard the shots at the time the deceased was killed, but heard no screams until the wife of the deceased came within a short distance of the home of one of the witnesses which was nearly a mile from the scene of the homicide, when she began to scream.

Quite a number of witnesses testified that the appellant was normal and knew right from wrong, and that they had never noticed anything to make them think he was insane, or that he did not know the nature, quality, and consequences of his acts.

There was objection to the alleged confession, and its admission is one of the assignments of error here.

In the first place, we think there was ample evidence to warrant the admission of the confession; that it was a free and vountary utterance made to the sheriff; and that there was no effort, on the part of the appellant, to testify as to duress, hope of reward, or to threats made to elicit such confession, at the time the confession was first offered.

The case proceeded, after the admission of the confession, until the state finished its testimony, when, as stated above, the appellant offered himself as a witness in opposition to the confession. The court then stated that, if he was offered as a witness on one point, he would be a witness for all purposes. He, thereupon, took the stand and testified, giving a clear and consistent narrative of the killing and the circumstances leading thereto.

There is nothing in the record, so far as shown by his testimony, that would indicate that appellant was not a normal person, with sufficient intelligence to know right from wrong. The admission of testimony as to the confessions was proper because, at the time, it was admitted there was nothing whatever to show that it was not free

and voluntary. The appellant's testimony and that of others as to his mental condition were admitted and considered by the jury under liberal instructions which told the jury that, if after consideration of the testimony of appellant, with the other testimony in the case, the jury thought the confession was obtained unlawfully, either through fear, or hope of reward, they might not consider same as evidence against the defendant.

But, even if such confession had been wrongfully admitted, it was rendered harmless by the appellant taking the stand himself and testifying to the same facts as a witness in the case. Had the appellant offered himself as a witness at the time the confession was first offered, and asked that his testimony and that of the other witnesses, as to the confession being free and voluntary, be heard out of the presence of the jury, he could have testified on that question alone before the judge in the absence of the jury.

There was, therefore, no error in admitting evidence as to the confession.

Evidence as to his mental condition and as to his responsibility for his acts and his understanding of the nature, quality, and consequences of his acts, was for the jury on conflicting evidence.

Numerous instructions were given to the appellant presenting his cause as favorably to the jury as he was entitled to have it.

The question as to whether the appellant should be hanged for his crime, or sent to the penitentiary for life therefor, was for the jury, and we have no power to overrule what they have done, nor would we, on this record, be warranted in so doing if we had the power.

It would seem from the evidence in this case that this murder was as atrocious as one could well be, and the appellant deserved the death penalty. The judgment of the court below will, therefore, be affirmed.

Affirmed, and Thursday, December 1, 1932, fixed as the date of execution.