SPIVEY *v.* STATE.

Division A. Dec. 3, 1951.

No. 38193 (55 So. (2d) 404)

**J. O. Hollis,** for appellant.

**Joe T. Patterson,** Assistant Attorney General, for appellee.

**Kyle, J.**

The appellant, Leo Spivey, was indicted at the April 1950 term of the Circuit Court of Leake County, on a charge of murder in the killing of Lester Lewis. On the first trial of the case the jury was unable to agree on a verdict. The case was tried again at the April 1951 term of the court and the appellant was convicted of manslaughter and was sentenced to serve a term of ten years in the state penitentiary. From that judgment he prosecutes this appeal.

The killing occurred on the evening of January 1, 1950, in a public road near a church in the Gallilee community. The appellant was the only eyewitness to the shooting. The deceased, Lester Lewis, and his wife, Ellee Lewis, were walking homeward about nightfall, and at a point

where two roads intersected near the church the deceased met James Henry Johnson, who lived only a short distance from the road intersection. Johnson wanted to talk to the deceased about a school matter, and the deceased left his wife, who had a baby in her arms, at the road intersection and walked a short distance down the road with Johnson. A few minutes later the appellant appeared at the forks of the road and walked down to the point where the deceased and Johnson were standing and talking to each other. Johnson then left and went to his home. Ellee walked over the hill and stopped and waited for her husband. About twenty-five minutes later she heard a gun shot report, which came from the direction of the forks of the road. Ellee then turned and walked back to the forks of the road and found there a package of clothes that her husband had been carrying under his arm, but she did not see either her husband or the appellant. Ellee then went to James Henry Johnson's house, which was situated only a short distance from the road, and told him about the gun fire. Johnson had also heard the gun fire and he and Ellee and Johnson's wife went back to the forks of the road to make an investigation, and about 150 yards beyond the forks of the road found the body of the deceased lying in the road with his hands by his side and his hat over his face. There were no signs of any scuffle near the body of the deceased, and no weapon of any kind.

The sheriff was notified of the killing and arrived at the scene of the killing between 8:30 and 9:00 o'clock. The sheriff examined the body of the deceased, which was still lying in the roadway, and found a bullet wound in the abdomen to the left of and just below the navel. He found no weapon of any kind on or about the body of the deceased and no broken places in the ground near the body. After the sheriff had completed his investigation at the scene of the killing, he and his deputy, Buddy Wallace, went to the home of Ben Bloodsow, the father of the appellant's wife, where they found the ap-

pellant and placed him under arrest. The sheriff asked the appellant why he had killed the deceased. The appellant first denied that he had killed the deceased. The sheriff then said "Leo, you just as well tell the truth; no use lying—we know you killed him." The appellant admitted that he had killed the deceased, and in answer to the sheriff's question, "How come you to kill him?" said "I let him have a dollar—I went to get my dollar; I let him have a dollar, and I went to collect my dollar."

Before the sheriff was permitted to testify as to the statements made by the appellant to the sheriff immediately after the arrest, the court, at the request of the appellant's attorney, conducted a preliminary inquiry out of the presence of the jury for the purpose of determining whether the alleged admissions or confession made by the appellant had been made freely and voluntarily. During the preliminary inquiry the sheriff and his deputy both testified and were cross-examined by appellant's attorney, and the appellant and his wife testified also. At the conclusion of the preliminary inquiry the court held that the proof was sufficient to show that the statements had been made by the appellant freely and voluntarily and that the statements were therefore admissible as evidence to be considered by the jury.

After the State had closed its case, the appellant took the stand and testified in his own behalf. The appellant testified that he was going up the road from the church and saw Lester Lewis talking to James Henry Johnson; that he walked up to the place where they were standing and spoke to them but did not engage in any conversation with them; that James Henry Johnson then left, and that Lester walked off down the road; that the appellant followed him and told him that he wanted to speak to him; that he asked Lester for the dollar that he owed him, and that made Lester mad; that appellant then told Lester that he could have the dollar. The appellant stated that he was afraid of the deceased because the deceased had whipped him twice and was a larger man than he, that

the deceased was drinking at the time. The appellant testified further that he started down the road to Ben Bloodsow's house, and that the deceased called and told him to wait, he was going to pay him; that appellant stopped and waited for the deceased, but the deceased did not come to him; that the deceased said, "G— d— you, I am going to kill you," and ran his right hand in his overall bosom; that appellant thought he had a gun and was going to kill him, and that appellant then shot the deceased and ran; that he did not know that he had killed the deceased at the time; that he went to Ben Bloodsow's house, and while running through Ben Bloodsow's pasture lost his pistol. One cross-examination the appellant admitted that he had heard Lester Lewis calling his wife after he fell, and that he had told Ben Bloodsow immediately after the shooting that he had shot the deceased, but the appellant stated that he did not know at that time that he had killed the deceased. Several character witnesses testified for the appellant that the general reputation of the appellant for peace or violence was good. Earl Watkins, a constable and special deputy sheriff, was called as a witness in rebuttal by the State, and testified that on the night of the killing the appellant stated to him in a conversation that he had with the appellant near the road at Ben Bloodsow's house that Lester Lewis owed him a dollar and "he wouldn't pay him and he killed him."

The appellant makes several assignments of error on this appeal. The first assignment relates to the refusal of the court to require the court reporter to transcribe the notes of the testimony given by the sheriff at the first trial, as requested by appellant's attorney. The request of appellant's attorney for a transcript of the sheriff's testimony taken at the former trial was made for the first time during the progress of the second trial and while the sheriff was testifying as a witness for the State. It was not the duty of the court to suspend the trial of the case for the purpose of complying with the

appellant's request for a transcript of the sheriff's testimony taken at the former trial. If the appellant desired to show a variance in the sheriff's testimony on the second trial from the testimony given by him at the former trial, the appellant could have made that proof by any person who had heard the witness testify during the former trial if he remembered what the testimony was. Crane v. State, 157 Miss. 548, 128 So. 579. If the appellant's attorney desired to have a transcript of the testimony taken during the former trial, he should have made proper arrangement with the court reporter for having such transcript prepared before the second trial was begun.

The next assignment of error relates to the admission of the testimony of the sheriff concerning the statements made by the appellant to the two officers after his arrest in which the appellant admitted that he had killed the deceased and that he had gone to the deceased to collect a dollar that the deceased owed him. The appellant's attorney contends that the statements were made as a result of the threats and intimidation of the officers. But, as we have stated above, the record shows that the statements were not admitted in evidence before the jury until after the court had conducted a preliminary hearing out of the presence of the jury and had found that the statements were made by the appellant freely and voluntarily; and this Court has held that, unless the decision of the trial court that a confession was freely and voluntarily made and is therefore admissible is manifestly wrong, the judgment of the trial court will not be reversed on appeal because of the admission of such confession. Moore v. State, 207 Miss. 140, 41 So. (2d) 368; Clark v. State, 209 Miss. 586, 48 So. (2d) 127; Jones v. State, 209 Miss. 896, 48 So. (2d) 591. It should be observed also that appellant's claim of prejudicial error based upon the admission of the above mentioned statements is without force for the additional reason that the appellant a few minutes after

the sheriff had testified took the stand in his own behalf and made the same statements to the jury.

The appellant next contends that the court should have sustained his motion for a directed verdict made immediately after the State rested its case. And the appellant cites in support of this contention the case of Weathersby v. State, 165 Miss. 207, 147 So. 481, 482. In the Weathersby case the Court held that ''where the defendant or the defendant's witnesses are the only eyewitnesses to the homicide, their version, if reasonable, must be accepted as true, unless substantially contradicted in material particulars by a credible witness or witnesses for the state, or by the physical facts or by the facts of common knowledge.'' But it is clear that the rule laid down in the Weathersby case was not applicable to the motion made by the appellant at the close of the State's testimony, for the reason that at that time neither the appellant nor his other witnesses had testified, and their version of the homicide had not been given to the jury. The argument made in support of this third assignment of error may be appropriately considered, however, in connection with appellant's fifth assignment of error, in which appellant challenges the ruling of the court in refusing to grant the peremptory instruction requested by him at the conclusion of all the testimony.

But we think that the court committed no error in refusing to grant the peremptory instruction requested by the appellant at the conclusion of all the testimony. It is true that the appellant was the only eyewitness to the homicide, and that he testified that he shot the deceased because the deceased had threatened to kill him and had run his right hand in his bosom as if to draw a gun. But that part of the appellant's testimony was to be considered by the court and the jury along with the other parts of the appellant's testimony, and along with the testimony of the other witnesses, for the purpose of determining whether the appellant shot the deceased because he was in real or apparent danger of losing his

own life or suffering great bodily harm at the hands of the deceased, or whether the appellant shot the deceased in pursuance of a deliberate design to kill the deceased, or in the heat of passion engendered during a quarrel that he himself had provoked and at a time when he was in no real or apparent danger. The appellant admitted that he had armed himself with a deadly weapon, and had sought out the deceased for the purpose of collecting a small debt that he claimed the deceased owed him; that he had followed the deceased approximately 150 yards down the road and had engaged in an argument with the deceased about the debt, and a few minutes later had shot him. The State's witnesses, including the sheriff, had testified that no gun or other weapon of any kind was found on the deceased, or about his body, after the killing had occurred, and that there were no signs of a scuffle on the ground near the body of the deceased. The appellant had fled from the scene of the killing and, when arrested by the sheriff two hours later, had denied that he had killed the deceased. These facts were facts that the court and the jury might rightfully consider as being entirely contradictory of the appellant's claim that he had shot the deceased because he was in real or apparent danger of losing his own life or suffering great bodily harm at the hands of the deceased. And we think that the court properly submitted the question of appellant's guilt or innocence to the jury for their determination, and that the jury's verdict is amply supported by the evidence. Goff v. State, Miss., 49 So. (2d) 238; Pitts v. State, Miss., 51 So. (2d) 448.

It is not necessary that we discuss in detail the other assignments of error. The court committed no error in admitting the rebuttal testimony of Earl Watkins, a witness for the State. And the court committed no error in refusing to grant the four instructions referred to in appellant's sixth assignment of error. The instructions granted to the State and to the defendant embodied a full statement of the applicable principles of law. The sub-

ject matter of Instruction No. 3 and Instruction No. 6 which were refused by the court had been adequately covered in other instructions granted to the appellant, and the other two instructions requested by the appellant were properly refused.

We find no reversible error in the record, and the judgment of the lower court is affirmed.

Affirmed.