WELCH v. MORGAN

No. 39750 October 17, 1955 82 So. 2d 820

*Roy J. Goss,* Columbia; *R. W. Heidelberg, Jr.,* Hattiesburg, for appellant.

*Henry Mounger, Hammond & Pope, Ernest R. Duff,* Columbia, for appellee.

APPELLANT IN REPLY.

HALL, J.

Appellee brought this suit and recovered judgment for $1250.00 damages to his automobile and for personal injuries sustained by him when his automobile, which he was driving, was struck by the automobile of appellant at the right angle intersection of South Main Street with South High School Avenue in the City of Columbia. Appellant was traveling south on South High School Avenue, and appellee was traveling north thereon and was undertaking to turn to the west and to his left into South Main Street when the collision occurred. All the witnesses agree that appellee was traveling at a reasonable rate of speed, variously estimated at from 10 to 25 miles per hour. The witnesses disagree as to appellant's rate of speed, those for appellee saying that he was running at about 50 miles per hour, and those for appellant saying that his speed was 25 to 30 miles per hour. The City ordinance fixed the speed limit at this point at 30 miles per hour. Appellee's witnesses say that as he approached the intersection he gave a hand signal for a left turn and turned across the west lane of High School Avenue and

into South Main Street and had practically cleared the intersection when appellant turned to his right into South Main Street and struck appellee's right front fender opposite the hood. Appellant's witnesses dispute this and say that the collision occurred in South High School Avenue and that no signal was given for a left turn. Thus it is seen that the evidence was sharply in conflict on the crucial issues as to appellant's speed, as to the position of both cars at the time of the collision and as to the giving of a signal by appellee for a left turn by him.

Section 8196, Code of 1942, provides: "The driver of a vehicle within an intersection intending to turn to the left shall yield the right of way to any vehicle approaching from the opposite direction which is within the intersection or so close thereto as to constitute an immediate hazard, but said driver, having so yielded and having given a signal when and as required by this Act, may make such left turn and the drivers of all other vehicles approaching the intersection from said opposite direction shall yield the right of way to the vehicle making the left turn."

 There was evidence for appellee that when he started his left turn the appellant's car was about 100 feet away, and that he negotiated the turn and had practically completed it when struck, while the evidence for appellant was that appellee turned in front of him when he was only about 25 feet from the intersection and when he had no opportunity to stop. These numerous conflicts in the evidence make this a typical case for decision by a jury and we will not interfere with its verdict regardless of which way it goes. Consequently the trial court committed no error in submitting the case to the jury, and, since the contentions of both sides are supported by substantial evidence, he was correct in refusing to set aside the verdict as being against the overwhelming weight of the evidence.

■■ The next assignment is based upon two statements of the trial judge in passing upon the reception of testimony. In one place the witness Allen Freeman was asked as to what effect the accident had upon the plaintiff, objection was made, and the court said ''That would be objectionable. He can tell the condition before and afterwards and it would be up to the jury and others to determine what caused it.'' No objection was made to the court's statement and the question was reframed so as to comply with the court's ruling and the trial proceeded without further objection on this feature. Another witness was asked how the plaintiff's injury has affected his palsied condition to which objection was made, and the court said ''He can tell whether it is better or worse but it is for the jury to draw the conclusion whether or not that caused it.'' Appellant says that these statements constitute oral instructions to the jury in violation of Section 1530, Code of 1942. We do not think so. In Bumpus v. State, 166 Miss. 276, 144 So. 897, this Court said: ''In passing, we will say that the statute invoked does not place the judge in a strait-jacket nor prevent him from having anything to say during the progress of a trial. Of course, he should keep off the province of the jury, and not try to influence their verdict; and while it may be safer for him to rule without giving his reasons therefor, he has the right to give such reasons if he so desires, and to show why, in his opinion, the reasons advanced for a contrary ruling are unsound. In so doing, he may go too far and transgress the proprieties; but such is not the case here.

''It is true that 'an overspeaking judge is no well-tuned cymbal,' but, in language somewhat similar to that of Mr. Justice McReynolds, in Berger v. United States, 255 U. S. 43, 31 S. Ct. 230, 65 L. Ed. 489, neither is an aphonic dummy a becoming receptacle for judicial power.''

We do not think the trial judge committed any error in his remarks that contravened Section 1530.

Appellant also contends that the trial court committed reversible error in not ordering a mistrial of the case because of certain improper remarks made by counsel for appellee during the course of the trial. The record shows that the following occurred during the cross examination of the witness Allen Freeman:

"Q. Mr. Freeman, you have a suit against Mr. Welch too, haven't you?

"A. I will let my lawyer answer that question.

"BY MR. MOUNGER: Yes, we have a suit for him. See that knot on his head? He got that in the wreck.

"BY MR. POPE: We'll also admit he was knocked unconscious and got 3 broken ribs.

"Q. I object to that. I - -

"BY THE COURT: Just a minute. The jury is instructed to disregard those statements. That isn't any part of this law suit.

"BY MR. HEIDELBERG: In view of the statements by counsel the defendant moves the court to enter a mistrial in this cause.

"BY THE COURT: The jury is instructed to disregard any side statements any lawyer makes. The witness is the only one giving evidence. Any statement, or statements, by the attorneys about what happened in another case has no place in this case. I am going to ask each and every juror can you and will you disregard it? (Each juror nods in the affirmative.)

"That isn't part of the testimony and I am directing you to wholly disregard it and pay no attention to it. All the testimony you have a right to listen to is the testimony of the witnesses and any side remarks of any attorneys has no place in this case and should be wholly disregarded. The court is now directing you to wholly disregard it and pay no attention to it. I am asking you again gentlemen, can all of you do that? ( Each juror nods in the affirmative.)"

■■■ We think that the remarks of appellee's counsel were wholly improper and that the trial judge was eminently correct in interrupting as he did and instructing the jury and exacting a promise to disregard the remarks which had been made. It is not necessary to order a mistrial every time a lawyer makes some improper remark in the trial of the case. The remarks could have had but little effect upon the jury, and, while they should not have been made, counsel were rebuffed by the court and the sting of their remarks probably had an opposite effect upon the jury after the reprimand by the trial judge. In 3 Am. Jur., p. 607, Appeal and Error, Sec. 1059, it is said: "As a general rule, a judgment will not be reversed for misconduct of counsel, unless the appellate court is of the opinion that such misconduct had a prevailing influence upon the jury, to the detriment of the appellant."

■■ ■ Finally, it is contended that the verdict of $1250.00 is so large as to evince passion and prejudice on the part of the jury. It is undisputed that the damage to his car was $422.50, which leaves a little over $800.00 for personal injuries. Appellee was 70 years of age at the time of the accident. There was no dispute about his injuries. He had numerous injuries and bruises about his body. His nerves were badly shaken up. He was suffering slightly with a palsy in his hands before the injury and it has grown considerably worse since then. He had been doing part time carpentry work making from $10.00 to $15.00 per day before the injury and has not been able to follow that occupation since then. We think the verdict is not out of reason, and the judgment thereon is therefore affirmed.

Affirmed.

*Roberds, P.J.,* and *Kyle, Arrington* and *Gillespie, JJ.,* concur.