HENRY *v.* STATE

No. 42652 June 3, 1963 154 So. 2d 289

264

April 19, 1965

174 So. 2d 348

*Jack H. Young,* Jackson; *Jess Brown,* Vicksburg; *Robert L. Carter,* New York, for appellant.

*G. Garland Lyell, Jr., Asst. Atty. Gen.,* Jackson, for appellee.

Rodgers, J.

On Suggestion of Error, the original opinion in this case has been withdrawn by this Court and the following opinion is substituted in its place.

The appellant was tried and convicted in the Justice of the Peace Court of Bolivar County, Mississippi, on a charge of disorderly conduct of disturbing the peace of Sterling Lee Eilert. The charge was brought under Section 2089.5, Miss. Code 1942, Rec. On appeal to the County Court, the case was tried de novo, and appellant was again convicted. He was accordingly sentenced to serve sixty days in jail and pay a fine of $250. The Circuit Court affirmed the judgment of the County Court and appellant has appealed to this Court.

The evidence in this case reveals the following facts: On March 3, 1962, Sterling Lee Eilert "hitchhiked" (begged an automobile ride) on the various highways from his home in Memphis, Tennessee, to the intersection of Highways 49 and 61 in Clarksdale, Mississippi. He arrived at this intersection about five o'clock in the afternoon, and about 5:30 o'clock appellant stopped his automobile at this intersection and invited young Mr. Eilert to ride with him. They proceeded along Highway 61 toward Shelby, Mississippi, and after they had passed Alligator, Mississippi, appellant asked Mr. Eilert about his sex life. It is not necessary to detail the ensuing conversation. It is sufficient to say that the foregoing conversation culminated in assault upon Mr. Eilert, in that appellant reached over and touched his privates. The State witness immediately requested the appellant to stop the automobile, and when it stopped, he got out and went to the back and got his suitcase. He looked at the tag on the car, and although he could not see all of the numbers on the tag, he remembered the number 1798. Mr. Eilert immediately sought the police, first by telephoning and finally by going to the police station. He gave the police a description of the

automobile and the driver, as well as the numbers he saw on the tag. The officers promptly radioed Clarksdale for the name of the owner of the automobile from the records of license tags. This request was shown to have been made at 5:56 o'clock. The information was immediately given to the officers, that Aaron Henry was the owner of the automobile described by the witness.

The officers prepared an affidavit, which was signed by the witness Eilert. The affidavit was presented to the Justice of the Peace, Rowe, who issued a warrant for the arrest of defendant Aaron Henry. One of the officers took the warrant and the witness to Clarksdale and the warrant was turned over to the desk clerk at police headquarters. Notice was given to patrol cars by radio from the Clarksdale police station, notifying them to be on the lookout for appellant, Aaron Henry. This information was received by radio by officer Henry Petty at 6:04 P.M., and he immediately went to the drug store and home of Aaron Henry, but his automobile was not at the drug store or at his home. Later in the afternoon, appellant's automobile was located at his home ten or twelve minutes to seven o'clock. Notice was relayed by radio to the chief of police, who went to the home of the defendant and arrested him a few minutes before seven o'clock.

Appellant's defense to the charge was an alibi. His testimony shows that he left the drug store at 4:45 o'clock, and went to the Delta Burial Corporation. This is a funeral home operated by John Melcher. He said he remained at the funeral home until approximately 5:20 P.M.

Defendant introduced several witnesses who testified that they saw him at the funeral home between the hours of 4:45 and 5:20. Defendant also introduced his wife and two other witnesses who testified he arrived at his home about 5:30 or 5:35 o'clock. Defendant also

introduced a large number of Negro professional men, doctors, dentists, ministers and professors, as well as colored plantation owners and business men, to prove his good character.

Appellant has presented four assignments of error, on appeal, alleged to have been made in the trial of this case in the court below, but only argues three propositions, namely: (1) The assumption of jurisdiction of the cause by the trial court deprived appellant of his constitutional rights in due process. (2) The court erred in not granting a new trial to appellant on the ground that the county court permitted the State to introduce evidence obtained by an unlawful search of his automobile. (3) Appellant's conviction denied due process of law to the defendant because it rested on insufficient evidence of the essential elements of the crime, and because of error in the court's rulings.

## I.

The appellant based his first assignment of error upon "the absence of competent evidence of the existence of an affidavit on March 3, 1962, the date of the commencement of prosecution of appellant * * *." Appellant then argues that the justice of the peace had no jurisdiction to issue a warrant for the arrest of the defendant, Aaron Henry, and thereafter, the county court and circuit court had no jurisdiction of the cause because the defendant was alleged to have been convicted without due process of law.

The theme of appellant's contention is that no affidavit was made before a justice of the peace charging defendant with the crime; that in fact no warrant was issued by the justice of the peace before defendant was arrested. To sustain this thesis, appellant introduced one of his attorneys who testified (over objection of the State) that he called upon the county attorney and asked him if he had the affidavit "pursuant to" the arrest of Aaron Henry. He stated that the county at-

torney told him he did not have the affidavit, but that it was in the custody of Mr. Rowe, the Justice of the Peace, at Shelby. He said the county attorney advised him it would be necessary to amend the affidavit. This attorney also testified that he called the justice of the peace on the telephone and said that he was informed that he had no knowledge of the arrest of Aaron Henry, and that it did not come before him on the date of the alleged affidavit. Appellant also testified in his own behalf, stating that the warrant served on him was not the warrant in the file certified to the county court by the justice of the peace.

The testimony for the State showed the prosecuting witness Sterling Eilert signed an affidavit and that thereafter the Justice of the Peace Rowe issued the warrant charging defendant with a misdemeanor. The warrant was delivered to Officer Charles Reynolds, who, in turn, delivered it to the desk sergeant at Clarksdale, Mississippi. Chief of Police Ben C. Collins secured the warrant and served it upon the defendant at his home.

The record further reveals that the defendant's attorney admitted that an amended affidavit was properly substituted for the original which was lodged with the justice of the peace on the 14th day of March (the day the defendant was tried in the justice of the peace court.) Defendant was arraigned and tried on the amended affidavit certified to the county court from a justice of the peace court. A copy of this amended affidavit was given to defendant's attorney, and no objection was made to the amended affidavit at the time of the trial in the justice of the peace court.

The appellant points out that Section 1832, Miss. Code 1942, Rec., requires that an affidavit be lodged with the justice of the peace charging commission of a crime before warrant shall issue for arrest of an offender.

 █ This Court has repeatedly held that an affidavit is a prerequisite to prosecution for a misdemeanor. █

Moreover, we have held that a justice of the peace court has no jurisdiction of a criminal charge until an affidavit has been lodged with it. See the cases cited under the above Code Section 1832. This is also the general rule accepted in a majority of jurisdictions. See: 22 C.J.S., Criminal Law, Sec. 143, p. 379; 14 Am. Jur., Criminal Law, Section 245, p. 937.

Amendments, however, are liberally allowed under our Mississippi procedure so as to bring the merits of a case fairly to trial. The following code sections are illustrative of this point. The applicable part of Section 1202, Miss. Code 1942, Rec., with reference to this subject is in the following language: "On the trial in the circuit court of any case on such appeal the affidavit charging the offense and other proceedings may be amended at any time before a verdict, so as to bring the merits of the case fairly to trial on the charge intended to be embraced in the affidavits."

Section 2535, Miss. Code 1942, Rec., is in the following language: "When an appeal is presented to the circuit court in any criminal case from the judgment or sentence of the justice of the peace or municipal court, it shall be permissible, on application of the state or party prosecuting, to amend the affidavit, pleading, or proceedings so as to bring the merits of the case fairly to trial on the charge intended to be set out in the original affidavit; the amendment to be made on such terms as the court may consider proper."

The foregoing Code sections are also applicable to appeals to the county court. See Section 1617, Miss. Code 1942, Rec.

We have often held that defective affidavits on which a defendant was convicted in a justice of the peace court could be amended in the circuit court on appeal. Coulter v. State, 75 Miss. 356, 22 So. 872; Triplett v. State, 80 Miss. 379, 31 So. 743; Brown v. State, 81 Miss. 137, 32 So. 952; Mays v. State, 216 Miss.

631, 63 So. 2d 110; Simmons v. State, 179 Miss. 713, 176 So. 726; Moran v. State, 137 Miss. 435, 102 So. 388; Weddell v. Seal, Admr., 45 Miss. 726; Green v. Boone, 57 Miss. 617. See also 31 Am. Jur., Justices of the Peace, Sec. 130, p. 287. This is also accepted as the general rule. See 31 Am. Jur., Justices of the Peace, Sec. 126, p. 285.

Section 1205, Miss. Code 1942, Rec., provides the method of transmitting cases from the justice of the peace court to the circuit court or county court, and Section 1199, Miss. Code 1942, Rec. provides the form of the certificate required to be used to verify the record of the justice of the peace court on appeal.

It is universally accepted as the general rule of law that where properly authenticated or certificated records have been filed on appeal, they import absolute verity, and the record is the sole, conclusive and unimpeachable evidence of the proceedings in the court below. If the record is incomplete or incorrect, amendment, or correction, must be sought by appropriate proceedings. The record cannot be impeached collaterally by oral testimony or extrinsic evidence aliunde the record. 4A C.J.S., Appeal and Error, Sec. 1143, p. 1201, et seq. See also 31 Am. Jur., Justices of the Peace, Sec. 126, p. 285.

In the case of Whittington v. State 218 Miss. 631, 67 So. 2d 515, this Court pointed out the change in the law as shown by Section 1987, Miss. Code 1942, Rec., and said: "Although under Sections 1199 and 1200, Code 1942, it is still mandatory that the justice of the peace or the mayor or police justice, in appeals from their courts, shall transmit to the proper clerk a certified copy of the record of the proceedings with the original papers, process and appeal bond, yet, if no objection is made to the transcript before or during the trial of the case, on its merits, it will still be conclusively pre-

sumed that the transcript was before the court and complied in every respect with the law. Hence no error can be predicated on that ground on appeal to this Court."

The certificate of the justice of the peace and the record in this case show a general affidavit was made on "3-3-62" charging defendant with "disturbing the peace" and that a capias was issued on "3-3-62."

In the case of Winfield v. City of Jackson, 89 Miss. 272, 42 So. 183, this Court held that where an affidavit was missing, affidavit could be supplied by oral proof on the trial.

In the case of Redus v. Campbell, 85 Miss. 165, 37 So. at 1010, we held that it was competent for the circuit court to issue the necessary process to require the justice of the peace to produce the original papers in the cause of action.

The most direct and obvious method of procedure, applicable in a case where it is sought to be shown that there was in fact no affidavit made or lodged with the justice of the peace at the time the warrant was issued, is to summon the justice of peace to bring his trial docket into court. He may then be required to testify on a preliminary motion to quash and dismiss a criminal charge against the defendant, whether or not there was in fact an affidavit filed or lodged with him.

■■ ■ We are therefore of the opinion that the trial court was correct in overruling the motion of appellant to quash the amended affidavit charging the defendant with a misdemeanor, although the original affidavit could not be found among the papers certified to the county court; because the record reveals there was an original affidavit lodged with the justice of peace at the time the warrant was issued.

## II.

It is next contended by appellant that the court was in error in overruling his motion for a directed verdict, made when the State had rested its case. The second part of this motion is based upon the proposition that the State introduced the testimony of Officer Ben C. Collins, with regard to evidence alleged to have been obtained by an unlawful search of appellant's automobile.

The record shows that Officer Collins testified that after he had arrested Aaron Henry at his home and had conveyed him to the police station, he returned to Henry's home for the purpose of examining the interior of his automobile.

He testified that he went to the door and knocked and finally Aaron Henry's wife came to the door, and he told her that he would like to look at her car and she said she would get the keys because the car was locked. The officer unlocked the car and turned the switch on, plugged the cigarette lighter in, and discovered that it would not work. He then looked in the ash tray on the right side, and found it to be filled with red Dentyne Chewing Gum wrappers. The officer then said that he asked Aaron Henry's wife and people present "Can you tell me what's in this ash tray?" He then stated: "Aaron Henry's little girl said, yes, sir, them is Dentyne Chewing Gum wrappers, I put them in there about three days ago."

This evidence corroborates the testimony of the prosecuting witness, Sterling Lee Eilert, above set out, wherein he had informed the officers of the color of the upholstery of the automobile, the fact that the lighter would not work, and the ash tray was filled with chewing gum wrappers. There had been very little evidence to corroborate the testimony of Eilert until Officer Collins testified. Charles Reynolds knew the color of the

upholstery of defendant's automobile, and knew that the automobile was a "Star Chief Pontiac."

No objection was made to the testimony of Officer Collins with reference to the search at the time it was introduced and defense counsel cross-examined him about the chewing gum wrappers and the ash tray.

After careful examination of this record as a whole, we have come to the conclusion that the search of Aaron Henry's locked automobile without a search warrant, at a time when the automobile was in defendant's driveway, was an unlawful search and was in violation of Section 23, Miss. Constitution 1890.

In 1922, the Mississippi Supreme Court adopted the exclusionary rule announced in Weeks. V. United States, 232 U. S. 383, in Tucker v. State, 128 Miss. 211, 90 So. 845. Since that time this Court has accumulated a great wealth of opinions which have meticulously followed the exclusionary rule rejecting testimony obtained by unlawful search and seizures. [1]

In the case of Boyd v. State, 206 Miss. 573, 40 So. 2d 303 (1949), this Court pointed out that the search of an automobile without a warrant was unauthorized, and that an officer would not be permitted to invade the private premises of a defendant without a search warrant, and search an automobile in his garage, after the automobile had come to rest at the completion of the journey. See also Brooks v. State, 209 Miss. 150, 46 So. 2d 94. Cf. Smith v. State, 240 Miss. 738, 128 So. 2d 857.

### III.

■■ ■ It is suggested by the Attorney General in the instant case that the wife of defendant consented to the search of the automobile and thereby waived the necessity of a search warrant. We prefer, however, to follow the great weight of authority which holds that a wife cannot waive the constitutional rights of her husband. We hold that appellant's wife did not waive his constitutional rights by consenting to the search of

his automobile. Cofer v. United States, 37 Fed. 2d 677 (Miss. 1930); Gilliland v. Commonwealth, 224 Ky. 453, 6 S. W. 2d 467; Hays v. State, 261 P. 232 (Okla.); Rose v. State, 254 P. 509 (Okla.); 47 Am. Jur., Search and Seizures, Sec. 72, p. 548. Cf. Brewer v. State, 142 Miss. 100, 107 So. 376.

## IV.

 As a general rule in jurisdictions which adhere to the rule denying the admissibility of evidence secured by an unlawful search and seizure, the accused must ordinarily interpose a timely challenge to the validity of the seizure and admission of evidence. 20 Am. Jur., Evidence, Sec. 396, p. 357; 23 A C. J. S., Criminal Law, Sec. 1060, p. 7. In some jurisdictions, a preliminary motion is made for the suppression of evidence. In Mississippi, however, it is only necessary to object to admission of the evidence at the time it is offered. See 23A C. J. S., Criminal Law, Sec. 1060, at p. 14; Holmes v. State, 146 Miss. 351, 111 So. 860.

 It has been a long established procedural rule in this State that parties prejudiced by the introduction of inadmissible evidence are required to object to its admissibility at the time it is offered so that the trial judge may determine its admissibility before it is submitted to the jury. **(Hn 10)** Moreover, error cannot be predicated upon admission of evidence to which no objection was made. McNutt v. State, 143 Miss. 347, 108 So. 721; Harris v. State, 153 Miss. 1, 120 So. 206; Williams v. State, 171 Miss. 324, 157 So. 717; Dick, Aleck, and Henry, Slaves v. State, 30 Miss. 593; Loftin v. State, 150 Miss. 228, 116 So. 435; Holmes v. State, 146 Miss. 351, 111 So. 860; Carr v. State, 187 Miss. 535, 192 So. 569; Wright v. State, 212 Miss. 491, 54 So. 2d 735.

We have also held that a motion to exclude inadmissible testimony at the conclusion of the evidence comes too late. Harris v. State, supra; Dick v. State, supra; Peters v. State, 106 Miss. 333, 63 So. 666.

██ ██ We have therefore reached the conclusion that since the defendant made no objection to the introduction of the illegally obtained evidence, at the time it was offered, he waived his right to object to such evidence and error cannot now be predicated upon the failure of the trial judge to exclude such evidence from the consideration of the jury. Johnson v. State, 220 Miss. 452, 70 So. 2d 926; Baggett v. State, 219 Miss. 583, 69 So. 2d 389; Gillespie v. State, 215 Miss. 380, 61 So. 2d 150; Bennett v. State, (Miss.), 52 So. 2d 837; White v. State, 202 Miss. 246, 30 So. 2d 894; Poole v. State, 231 Miss. 1, 94 So. 2d 239.

██ ██ ██ We are of the further opinion that this case does not come within the rule announced by this Court in Brooks v. State, 209 Miss. 150, 46 So. 2d 94, because there is no substantial basis upon which it can be said that the appellant's counsel in this trial were so inadequate that they permitted a judicial farce to be accomplished. These three attorneys, namely, a Mississippi lawyer and two others out of New York City, possess high literary and legal attainments, and are all experienced trial lawyers. They were chosen by the appellant and he has made no complaint of inadequacy against them. A reading of this record demonstrates that their positions were at all times highly adversary in behalf of their client, and that judicial character was present in the proceedings at all times. In such circumstances, even if honest mistakes of counsel in respect to policy or strategy or otherwise occur, they are binding upon the client as a part of the hazards of courtroom battle. On this principle, compare the following cases from other jurisdictions: Woodell v. Maryland, 162 A. 2d 468 (1960); Wilson v. State, 51 N. E. 2d 848 (1943), an Indiana case; Hendrickson v. State, 118 N. E. 2d 493 (1954), an Indiana case; People v. Robinson, 177 N. E. 2d 132 (1961), an Illinois case; O'Malley v. U. S., 285 Fed. 2d 733 (6th Cir.); Lotz v.

Sacks, 292 Fed. 2d 657 (C. A. 6th Ohio) ; Popeko v. U. S., 294 Fed. 2d 168 (1961); U. S. v. Handy, 203 Fed. 2d 407 (3rd Cir. 1953); Arellanes v. U. S., 302 Fed. 2d 603 (C. A. 9 1962).

 Moreover, the defendant without objecting to the illegally obtained evidence, proceeded to cross-examine the State witnesses as to the evidence he now claims should not have been admitted so as to fully develop all the facts. He also introduced the same evidence by his own witnesses including photographs of the interior of the car. We are, therefore, of the further opinion that the admission of such evidence, unlawfully obtained, if error, was cured by the introduction of the same testimony by the defendant and he is estopped to complain that such evidence was erroneously admitted in the trial for the consideration of the jury. Prine v. State, 158 Miss. 435, 130 So. 687; Weatherford v. State, 164 Miss. 888, 143 So. 853; Smith v. State, 166 Miss. 893, 144 So. 471; Musselwhite v. State, 212 Miss. 526, 54 So. 2d 911; Spivey v. State, 212 Miss. 648, 55 So. 2d 404; Barnes v. State, 164 Miss. 126, 143 So. 475; Sykes v. City of Crystal Springs, 216 Miss. 18, 61 So. 2d 387.

## V.

 We do not believe that there is any merit in the contention of appellant that the evidence is insufficient to support a verdict of guilty. The defense offered by appellant was an alibi, and we are of the opinion that such evidence was a question for the determination of the jury. Prisock v. State, 244 Miss. 408, 141 So. 2d 711; Cobb v. State, 235 Miss. 57, 108 So. 2d 719; Passons v. State, 239 Miss. 629, 124 So. 2d 847.

The former judgment reversing this case for a new trial is hereby set aside and a judgment will be entered affirming the judgment and sentence of the Circuit Court. The judgment of the lower court is therefore affirmed.

Suggestion of Error sustained, former opinion withdrawn and new opinion rendered affirming judgment of lower court.

All Justices concur.

---

[1] At one time the rule was firmly settled, that evidence obtained by an unreasonable, unwarranted and unlawful search and seizure, if otherwise pertinent to the issue was not rendered incompetent and inadmissible because of the wrongful method in which it was obtained. See 20 Am. Jur., Evidence, § 394, p. 354. This rule passed through various stages, as shown by the following cases: Boyd v. United States, 116 U. S. 616 (1886); Weeks v. United States, 232 U. S. 383, 34 S. Ct. 341, 58 L. Ed. 652, LRA 1915B 834, Ann. Cas. 1915C 1177 (1914); Wolf v. Colorado, 338 United States 25 (1949); McNabb, et al. v. United States, 318 U. S. 332 (1943); Irvine v. California, 347 U. S. 128 (1954); Elkins v. United States, 364 U. S. 206 (1960); Agnello, et al. v. United States, 269 U. S. 20 (1925); Rochin v. California, 342 U. S. 165 (1952).

Finally, in the case of Mapp v. Ohio, 367 U. S. 643, 81A S. Ct. Rep. 1684, the Supreme Court of the United States held that the evidence obtained by unconstitutional search was inadmissible in state prosecutions, and vitiated state convictions by bringing the exclusionary rule established by the Fourth Amendment under the "due process" clause of the Fourteenth Amendment. The Court said: "Since the Fourth Amendment's right of privacy has been declared enforceable against the States through the Due Process Clause of the Fourteenth, it is enforceable against them by the same sanction of exclusion as is used against the Federal Government."

## ON MOTION TO REMAND FOR HEARING AND MOTION TO REPAY ADVANCED COST.

We have considered the motion of appellant Aaron Henry, requesting this Court to require the proper official of the State of Mississippi to refund to him costs alleged to have been incurred in the Supreme Court of the United States by order of a mandate dated March 2, 1965. The answer of the State of Mississippi to this motion has an attached copy of the motion filed by the Attorney General of Mississippi in the Supreme Court of the United States requesting that Court to vacate or modify its previous mandate.

We have also considered a motion filed by the Attorney General asking this Court to enter an order remanding the foregoing case to the County Court of the Second Judicial District of Bolivar County, Mississippi, for a hearing to determine whether or not there was a waiver of the right to object to the testimony of Clarksdale Chief of Police, Ben Collins, with reference to the search of appellant's automobile, in accordance with Rule 37B of the Mississippi Supreme Court.

An examination of the record in this case reveals that this Court determined (July 12, 1963, 253 Miss. 263, 154 So. 2d 289) that the knowledge obtained by the witness Ben Collins with reference to the interior of appellant's automobile was obtained in violation of the Mississippi Constitution, and we also determined that defendant waived his right to object to the admission of such evidence by failing to object at the time it was offered in evidence. The judgment and sentence of the trial court was affirmed in this Court.

An appeal was taken from the judgment of this Court to the United States Supreme Court. On January 18, 1965, the opinion of the Supreme Court was rendered, wherein it was held that: "We vacate the judgment of conviction and remand for a hearing on the question whether the petitioner is to be deemed to have knowingly

waived decision of his federal claim when timely objection was *not* made to the admission of the illegally seized evidence." (Emphasis supplied.) Henry v. State, 85 S. Ct. 564, 566-67 (1965).

The opinion of the Supreme Court of the United States pointed out that it had no power to revise judgments on questions of state law but stated that: "These justifications have no application where the state ground is purely procedural. A procedural default which is held to bar challenge to a conviction in state courts, even on federal constitutional grounds, prevents implementation of the federal right. Accordingly, we have consistently held that the question of when and how defaults in compliance with state procedural rules can preclude our consideration of a federal question is itself a federal question." 85 S. Ct. at 567.

The opinion also points out that: "The Mississippi rule requiring contemporaneous objection to the introduction of illegal evidence clearly does serve a legitimate state interest." *Ibid.* The Supreme Court was of the opinion, however, on the record in this case that: ". . . it appears that this purpose of the contemporaneous-objection rule may have been substantially served by petitioner's motion at the close of the State's evidence asking for a directed verdict because of the erroneous admission of the officer's testimony. For at this stage the trial judge could have called for elaboration of the search and seizure argument and, if persuaded, could have stricken the tainted testimony or have taken other appropriate corrective action. For example, if there was sufficient competent evidence without this testimony to go to the jury, the motion for a directed verdict might have been denied, and the case submitted to the jury with a properly worded appropriate cautionary instruction." 85 S. Ct. at 568.

Inasmuch as the Mississippi Circuit Courts do not have the authority to grant instructions to the

jury, except those requested in writing, the circuit judge could not have given the jury a well-worded cautionary instruction as suggested in the opinion, *supra*. Miss. Code Ann. § 1530 (1956). However, the trial judge could have stricken the evidence and advised the jury verbally not to consider the evidence introduced. This procedure is not in violation of the foregoing code section. Welch v. Morgan, 225 Miss. 154, 82 So. 2d 820 (1955). It is also true that the trial court could have sustained a motion to dismiss at any time, however there must be some method of orderly procedure in the trial of cases. In the case of Lewis v. State, 155 Miss. 810, 125 So. 419 (1930), this Court pointed out at p. 421 that:

"We need only to say as to this that it is the business of courts to adjudicate cases according to established and necessary general and practical rules of procedural as well as of substantive law. We have no dispensing power, and can assume none, to bend those essential rules to fit the exigencies of a particular case, else there would soon be no rules and no orderly enforcement of the law."

One who claims his constitutional rights have been violated, state or federal, and desires to object to such illegally obtained testimony being introduced before the jury must make his objection known to the trial court in such a manner and at such a time as to give the court an opportunity to sustain or overrule the objection before such illegal testimony has been given to the jury. The party claiming the right to object cannot wait until the testimony has been introduced, and also introduce the same testimony in his own right, and at the conclusion of the testimony expect the court to suppress such evidence and dismiss the case on the constitutional ground that the evidence should have been excluded from the jury.

The rule in the Federal court as to the suppression of illegally obtained evidence is set out under Rule 41

of the Federal Rules of Criminal Procedure, 18 U. S. C. A. at p. 212. There are many Federal cases cited under this rule in 18 U. S. C. A. holding that the right to object to evidence on the grounds of illegal search is waived unless there is a timely motion to suppress the evidence. A form for this motion may be found in the Appendix of Forms to the Federal Rules of Criminal Procedure.

The Supreme Court of the United States has said in the instant case that: "Only evidence extrinsic to the record before us can establish the fact of waiver, and the State should have an opportunity to establish that fact." The Court then pointed out that in cases from Federal Courts, the Supreme Court had vacated judgments on condition and remanded them for a hearing "suspending the determination of the validity of the conviction pending the outcome of the hearing. . . .

"By permitting the Mississippi courts to make an initial determination of waiver, we serve the causes of efficient administration of criminal justice, and of harmonious federal-state judicial relations." 85 S. Ct. at 570.

Finally, the Court said: "It has been suggested that this friction (federal habeas corpus procedure) might be ameliorated if the States would look upon our decisions in Fay v. Noia, supra, (372 U. S. 391, 439) and Townsend v. Sain, supra, (372 U. S. 293, 312-319), as affording them an opportunity to provide state procedures, direct or collateral, for a full airing of the Federal claims . . . Therefore, the judgment is vacated and the case is remanded to the Mississippi Supreme Court for further proceedings not inconsistent with this opinion." 85 S. Ct. at 570.

██ ██ In an effort to comply with the suggestion of the Supreme Court of the United States in its opinion, *supra,* and in an effort to find a procedural method whereby the state constitutional questions and the fed-

eral constitutional questions may be brought to the attention of the trial judge and will be effectively preserved, we are of the opinion, and so hold, that the person who desires to suppress evidence alleged to have been wrongfully seized may do so by making a motion similar to the motion permitted in the federal court at any time after the indictment and prior to the trial — asking the trial court to suppress the evidence on the ground that it was obtained in violation of rights under the United States Constitution.

██ ██ ██ If, however, a motion is not made prior to the trial, asking the trial court to suppress the wrongfully obtained evidence, the person desiring to have the evidence stricken may nevertheless object to the introduction of the evidence upon the federal ground and then upon the state ground, or either, during the trial and before the defendant has offered his evidence or defense. The court will then examine the federal and state claims raised by the objection so as to give a complete and effective airing of the objection, in the absence of the jury. The failure to object to the testimony and the failure to move to suppress it until after the introduction of all of the evidence for the State and defense will be considered a waiver of both federal and state questions of constitutional rights to exclude the tainted evidence. Nevertheless if it appears to the trial judge that the foregoing rule of procedure would defeat justice and bring about results not justified or intended by substantive law, the rule may be relaxed and subordinated to the primary purpose of the law to enforce constitutional rights in the interest of justice. Dogan v. Cooley, 184 Miss. 106, 185 So. 783 (1939).

██ ██ The United States Supreme Court has returned the instant case to this Court to determine whether the defendant Aaron Henry consciously waived his rights to object to the introduction of the testimony of Ben Collins with reference to the evidence obtained by the

wrongful search of defendant's automobile on the grounds that it violated the United States Constitution. The motion of the Attorney General of Mississippi requesting this Court to remand this case to the Circuit Court of the Second Judicial District of Bolivar County, Mississippi, and thence to the County Court of the Second Judicial District of Bolivar County for a hearing to determine whether or not the defendant consciously, knowingly and intentionally waived his right under the United States Constitution to have excluded from the consideration of the jury evidence unlawfully obtained, is hereby granted.

The Clerk of this Court will certify a mandate to the County Court of the Second Judicial District of Bolivar County, Mississippi, through the Circuit Court of that District, in which the County Court is directed to proceed — on reasonable notice to Aaron Henry — to determine whether or not he consciously and intentionally waived his right to object to the illegally obtained evidence offered by the witness Ben Collins. After having heard the evidence and determined the issue, the County Court will certify its findings and determination to this Court for further proceedings in compliance with the opinion of the United States Supreme Court.

The motion of appellant Aaron Henry, asking this Court to require the proper authorities of Mississippi to repay him the cost advanced in his behalf in the Supreme Court of the United States, is hereby continued and suspended pending the determination of the issue submitted to the County Court in the previous paragraphs of this opinion.

Motion to remand for hearing sustained; and motion to repay cost continued.

All Justices concur.