**Aaron E. HENRY, Petitioner,**

v.

**L. B. WILLIAMS, Sheriff of Bolivar County, Mississippi, and Thomas S. Hopkins, Sheriff of Coahoma County, Mississippi, Respondents.**

**No. DC 6831.**

United States District Court
N. D. Mississippi,
Delta Division.
May 5, 1969.

Jack H. Young, Jackson, Miss., for petitioner.

G. Garland Lyell, Jr., Asst. Atty. Gen., Jackson, Miss., for respondents.

## OPINION OF THE COURT

KEADY, Chief Judge.

Petitioner, convicted in the Mississippi state courts of disturbing the peace of Sterling Lee Eilert,[1] has sought to vin-

---

1. Mississippi Code Annotated § 2089.5 (1942 Recomp.) provides, in pertinent part, as follows:
"Disturbance of the public peace, or the peace of others.

1. Any person who disturbs the public peace, or the peace of others, by violent, or loud, or insulting, or profane, or indecent, or offensive, or boisterous conduct or language, or by intimidation, or seeking to intimidate any other person or persons, or by conduct either calculated to provoke a breach of the peace, or by conduct which may lead to a breach of the peace, or by any other act, shall be guilty of a misdemeanor, and upon con-

dicate his state and federal constitutional rights against unlawful search and seizure in the Mississippi Supreme Court, see Henry v. Mississippi, 253 Miss. 263, 154 So.2d 289 (1963),[2] and in the United States Supreme Court, see Henry v. Mississippi, 379 U.S. 443, 85 S.Ct. 564, 13 L.Ed.2d 408 (1964), reh. den. 380 U.S. 926, 85 S.Ct. 878, 13 L.Ed.2d 813 (1965); Henry v. Mississippi, cert. denied without prejudice to the bringing of a proceeding for relief in federal habeas corpus, 392 U.S. 931, 88 S.Ct. 2276, 20 L. Ed.2d 1389 (June 17, 1968). The matter is now before this court upon petition for writ of habeas corpus and, upon our examination of the records and briefs in previous proceedings in this case, the further evidence developed before this court at an evidentiary hearing held February 21, 1969, and briefs of counsel, we hold that the relief requested must be granted.

We shall endeavor to set this matter in proper perspective by briefly recounting the history of this extended, and in many respects bizarre, litigation, beginning with a series of events which occurred on the afternoon and evening of March 3, 1962.

Around noon on that day, Sterling Lee Eilert, an eighteen year old white male, began a "hitchhiking" trip from his home in Memphis, Tennessee, to Cleveland, Mississippi, where he had formerly resided. After obtaining rides with three different parties, he arrived at the northwest corner of the intersection of State Highways 61 and 49 in Clarksdale, Mississippi. He crossed the street, and after fifteen or twenty minutes, at approximately 5:30 p. m. he caught a ride in a late model four-door black "Star Chief" automobile[3] driven by a Negro man unknown to him at that time, but whom he was later to identify as the petitioner, Aaron Henry. The car upholstery was red with black or brown. According to Eilert's testimony, the two began driving southward on Highway 61, proceeding toward Cleveland, and the conversation turned to relations between the white and Negro races.

Eilert requested permission to smoke, and, being without matches or personal cigarette lighter, he pushed in the cigarette lighter on the right hand side of the dashboard, but found that it did not function. Also, he noticed the dashboard ashtray on the passenger side, when pulled out, was filled with red Dentyne chewing gum wrappers.

According to Eilert, the driver initiated a conversation concerning matters of a sexual nature, and, as they approached Shelby, Mississippi, he made suggestive comment and reached across the seat and touched Eilert's privates, thereby committing the offense with which Henry was to be charged. Eilert demanded that the driver stop the automobile, got his luggage from the rear seat, and, as the car drove away, observed the license tag number "1769". He was unable to ascertain the prefix to the left of those numbers, identifying the size, weight, and county of registration, as it was obscured by a red reflector disk. While attempting to phone the police, he again saw the automobile headed north on the highway toward Clarksdale. He walked approximately one block to the Shelby police station, and, finding no officer on duty, he prepared to make a telephone call to Cleveland from a nearby booth. At that moment, a Bolivar County Dep-

viction thereof, shall be punished by a fine of not more than five hundred dollars ($500.00), or by imprisonment in the county jail not more than six (6) months, or both."

2. The Mississippi Supreme Court wrote two opinions, the first reversing and remanding, and the second, upon the State's suggestion of error, sustaining the conviction. The first opinion dated June 3, 1963, is reported in the July 11, 1963, advance sheet issue of the Southern Reporter, 154 So.2d 289. This original opinion was withdrawn when the Court filed the second opinion dated July 12, 1963, which appears at the same page in the bound volume of the Southern Reporter as did the first opinion in the soft cover advance sheet issue.

3. Eilert later learned that it was of Pontiac make.

uty Sheriff, Manuel Nasser, and a visiting Clarksdale policeman, Charles Reynolds, drove up. Eilert reported the earlier events and gave them so much of the description of the Negro man, and of the automobile and its interior and tag number as he had observed. The three, along with a companion of Reynolds', entered the Shelby police station where Reynolds radioed Clarksdale Police Department for a "28", or identification of the tag number. Although the prefix might have been found on tag numbers in any or all of the state's eighty-two counties, he tried Coahoma County first, because, as he later testified, he suspected from Eilert's account that the car belonged to Aaron Henry, whom he knew to be a resident of Coahoma County. His suspicions were immediately confirmed and at 6:04 p. m. notice was given to patrol cars by radio from the Clarksdale police station, notifying them to be on the lookout for petitioner.

While still at the Shelby police station, Eilert signed an affidavit as complainant, which Deputy Nasser took before Justice of the Peace Rowe at Shelby.[4] Rowe, an eighty-four year old man at the time and physically unable to manually sign his name, affixed his signature to an arrest warrant by rubber stamp. Nasser then directed officer Reynolds to take Eilert and the warrant to Clarksdale Chief of Police B. C. Collins.

Officer Henry Petty of the Clarksdale police force located petitioner's automobile parked at his home ten or twelve minutes before 7 o'clock, p. m., and so notified Chief Collins, who at once went to the Henry residence and arrested petitioner several minutes later. An operator of a Clarksdale drug store and leader in Negro causes, Henry was a well known local figure. He was taken to the police station, identified by Eilert, interrogated by the County Attorney, and then delivered into the custody of Bolivar County officers who transported him first to the Shelby City Hall and then to the Bolivar County jail in Cleveland. About 9:30 p. m., Chief Collins, without a search warrant, returned to Henry's residence and, seeing petitioner's Pontiac automobile parked in the carport, he requested and obtained the car keys from petitioner's wife, unlocked the automobile, and examined its interior. His warrantless search revealed that the cigarette lighter was defective and the ashtray was filled with gum wrappers. Collins later testified to this and also: "I asked Aaron Henry's wife and the people there, 'Can you tell me what's in the ashtray?'" Aaron Henry's little girl [11 year old Rebecca] spoke up and said, "Yes, sir, them is dentyne chewing gum wrappers. I put them in there about three days ago"; and that following this conversation Collins "got out of the car, locked it back up, handed his [petitioner's] wife the keys and left."

On March 14, 1962, petitioner, represented by two attorneys, Robert J. Carter of New York and R. Jess Brown of Vicksburg, was tried and convicted of the offense charged in the Justice of the Peace court. Eilert and Collins were the only two prosecution witnesses; Collins

4. The original affidavit signed by Eilert charging disturbing the peace was not produced at trial in the Bolivar County court, and could not be located. However, it was amended by the County Attorney on March 14, 1962, the day Henry was tried in the Justice of the Peace court. The statutorily required certificate of the Justice of the Peace on appeal to the county court (Miss. Code Ann. §§ 1199 and 1205) merely referred to the original affidavit and capias, both dated March 3, 1962. Only the amended affidavit was produced at trial. Petitioner contended, therefore, that since there was no affidavit present in the file to support the arrest warrant dated March 3, 1962, the Justice of the Peace and, hence, the county court lacked jurisdiction to try the petitioner, as Miss. Code Ann. § 1832 (1942 Recomp.) requires that an affidavit be lodged with the Justice of the Peace charging commission of a crime before warrant may be issued for arrest of an offender. This point of law was adequately disposed of on Henry's appeal to the Mississippi Supreme Court, 154 So. 2d 289 at 291–294, and we decline to consider it here.

did not then testify as to the search he had made of the automobile.

On appeal to the County Court, the case was set for trial de novo on March 21, 1962. At approximately 7 o'clock, p. m., on the evening before trial, attorneys Brown and Carter, accompanied by attorney Jawn A. Sandifer of New York, arrived at Henry's home to discuss the defense of the case. Carter was to be the chief counsel and Brown the "leg man". Henry did not participate in the plotting of defense strategy, but did inform his counsel that there was a witness, Willie Singletary, Jr., who could testify that a cigarette lighter in petitioner's automobile had been repaired at that witness' garage earlier that year. The attorneys also talked to petitioner's wife about the automobile search and knew that she had not been served with a search warrant.

It is necessary to briefly describe the arrangement of the county courtroom on the day of the trial in order to present the factual setting for the issues before the court. Petitioner sat at the far right of the defense counsel table which was located on the right-hand side of the courtroom with, from right to left, Brown, Sandifer and Carter. The state's table was placed at right angles to that of the defense so that opposing counsel were almost face to face. The weather was extremely warm that day and, although pitchers of ice water and cups were placed on the judge's bench and on the state's table, none was provided for the defense. Defense counsel were told, however, that they might use a "for colored only" fountain located outside the courtroom.

The first witness, Eilert, gave the same account of the events of March 3 as previously detailed. His testimony was corroborated by testimony of Chief Collins, who described the interior appearance of petitioner's automobile as revealed by his search. The District Attorney knew that Collins' testimony as to what he found without search warrant in the car during Henry's absence was "probably inadmissible" on Fourth

Amendment grounds and had so forewarned the witness and the County Attorney, who was to question Collins. To the prosecution's surprise, when answers respecting the search were elicited, there was no immediate defense objection. Indeed, a motion to exclude the evidence, in those words, was not made at any time during the trial. But there were motions for *directed verdict of acquittal* at the close of the state's case, and again when all the evidence was in, on the ground, inter alia, of unreasonable search and seizure. Both motions were overruled. The District Attorney was later to recall, and so testified on the federal habeas corpus hearing, that when Collins was asked what he found in the car, attorney Sandifer began to rise as if to object, but was pulled down by the coattails by Carter, and that a "whispered conversation" ensued, indicating to him that they might have agreed, as a matter of trial strategy, that objection should not be made at that time. Sandifer and Carter denied that they thus conferred to waive objection. Sandifer recollected that at some point in the trial, he stood up to get a drink of water at the judge's bench and was motioned down by Carter, and the two attorneys exchanged brief remarks as to the lack of ice water. They affirmed they had a positive intent not to waive petitioner's Fourth Amendment rights and to press the point for a *dismissal* of the case at the earliest appropriate time. R. Jess Brown, petitioner's Mississippi counsel, asserted that his attention was diverted from hearing Collins' testimony because of his preoccupation in reading certain statements handed him. It is not necessary here to discuss in detail the defense presented by Henry. Suffice it to say that he introduced a number of alibi and character witnesses, but that their testimony was insufficient to raise a reasonable doubt as to Henry's guilt in the minds of the jurors. He was convicted and sentenced to serve sixty days in jail and to pay a fine of $250.00.

After affirmance on the record by the Bolivar County Circuit Court of the

County Court judgment, petitioner appealed to the Mississippi Supreme Court. Acting in the belief that petitioner had been represented by nonresident counsel unfamiliar with local procedure, that Court reversed and remanded for a new trial despite petitioner's failure to comply with the Mississippi rule than an objection to inadmissible evidence must be made at the time it is introduced, and noted that the "testimony of the State's witness * * * is, in effect, uncorroborated without the [illegal] evidence disclosed by the inspection of defendant's automobile." 154 So.2d at 296. The state attorney general filed a suggestion of error, pointing out to the Court that Henry had, in fact, been represented at trial by competent local counsel in the person of R. Jess Brown, in addition to accomplished out-of-state attorneys. The Mississippi Supreme Court thereupon withdrew its original opinion and filed a new one, affirming the conviction below.[5]

The Supreme Court of the United States granted certiorari, vacated the judgment and remanded to the Mississippi Supreme Court for determination whether petitioner "after consultation with competent counsel or otherwise, understandingly and knowingly forewent the privilege of seeking to vindicate his federal claims in the state courts, whether for strategic, tactical, or any other reasons that can fairly be described as the deliberate by-passing of state procedures * * *." [Citing Fay v. Noia, 372 U.S. 391, 439, 83 S.Ct. 822, 849, 9 L.Ed.2d 837 [869]. The Court noted

that indications of possible waiver were (a) defense counsel's failure to respond to the state's "challenge" on suggestion of error that its suggestion "should not be sustained if either of the three counsel [for petitioner] participating in this trial would respond hereto with an affidavit that he did not know that *at some point in a trial in criminal court* in Mississippi that *an objection to such testimony* must have been made," and (b) the affidavit of the district attorney appended to the State Supreme Court brief recounting the equivocal activity at the defense table [6] contemporaneous with Collins' testimony as to what he found in Henry's automobile. The Court also intimated that the evidence suggested the possibility of reasons for a strategic move; specifically, that the defense may have deliberately let the tainted evidence go in so that Collins' testimony might later be discredited by that of Singletary, defense witness, or, that by delaying objections, the defense might have hoped to invite error and lay the foundation for a subsequent reversal. The Court concluded that "if either reason motivated the action of petitioner's counsel, and their plans backfired, counsel's deliberate choice of the strategy would amount to a waiver binding on petitioner and would preclude him from a decision on the merits of his federal claim *either in the state courts or here*." (Emphasis added) 379 U.S. 451, 85 S.Ct. 569, 13 L. Ed.2d 415.

Because of the possibility of waiver of federal claims, the majority opinion of the United States Supreme Court preter-

5. Said the Court at 296:
"These three attorneys, namely, a Mississippi lawyer and two others out of New York City, possess high literary and legal attainments, and are all experienced trial lawyers. * * * A reading of this record demonstrates that their positions were at all times highly adversary in behalf of their client, and that judicial character was present in the proceedings at all times. In such circumstances, even if honest mistakes of counsel in respect to policy or strategy or otherwise occur, they are binding upon the client as a part of the hazards of courtroom battle."

6. Hoke Stone's affidavit recited:
"(3) That at the point in the examination of Chief of Police Collins when he questioned him as to his findings in the search of the automobile, anticipating objection, he, affiant, paused and turned to the counsel table of the defense to see one of defendant's counsel, Jawn Sandifer, rise to object before Chief of Police Collins had a chance to answer, and Sandifer was promptly motioned to his seat by the chief of defense counsel, Robert L. Carter, by Robert L. Carter's jerk on the coat tail of Sandifer, returning him to his seat."

mitted an actual decision on whether enforcement of the Mississippi contemporaneous objection rule, in this case, served a legitimate state interest and thus furnished an adequate and independent nonfederal ground for upholding conviction, upon direct review.[7]

Upon remand, the Mississippi Supreme Court, instead of directly conducting a fact-finding hearing, remanded the case to the County Court of Bolivar County, where petitioner had originally been convicted, for a determination of the waiver question.[8] On October 11, 1966, the County Court held an evidentiary hearing and on January 5, 1967, entered an opinion finding no waiver by either petitioner or his counsel. No appeal was taken by the State from the County Court's decision; however, the Mississippi Supreme Court, on its own motion, reviewed the record made at the hearing and reversed, reinstating the judgment of conviction and the sentence. Henry v. State, 198 So.2d 213 (Miss.1967). That Court granted a stay of execution of sentence, pending disposition of a writ of certiorari by the United States Supreme Court. When the writ was denied on June 17, 1968, the instant petition for writ of habeas corpus was granted on July 8, 1968, execution of sentence stayed and petitioner admitted to bail pending determination of the habeas corpus proceeding.

## I.

### EXHAUSTION OF STATE COURT REMEDIES

█ While we ordinarily decline to act upon the merits of a state prisoner's petition for writ of habeas corpus until he has exhausted the state post-conviction remedies provided in Miss.Code Ann. § 1992.5 (1942 Recomp.), see, e. g., King v. Cook, 287 F.Supp. 269 (N.D. Miss.1968), we think that to defer action on that ground here would be futile, and not required by the principle of comity, as codified in the "exhaustion of state remedies" requirement of 28 U.S.C. § 2254. The rule of exhaustion "is not one defining power but one which relates to the appropriate exercise of power." Bowen v. Johnston, 306 U.S. 19, 27, 59 S.Ct. 442, 446, 83 L.Ed. 455, 461 (1939); Fay v. Noia, supra, 372 U.S. 391, 420–421, 83 S.Ct. 822, 9 L.Ed.2d 837, 857–858; and no purpose would be served by relegating petitioner to further state remedy.

## II.

### FEDERAL HABEAS POWER TO REVIEW STATE COURT JUDGMENTS RESTING ON INDEPENDENT AND ADEQUATE STATE GROUNDS

█ It is a well settled principle that the United States Supreme Court will, on direct appeal, decline to review state court judgments which rest on independent and adequate state grounds, notwithstanding copresence of federal grounds.[9] Where the state ground is substantive, the court has no power to revise judgments on questions of state law, Murdock v. City of Memphis, 20 Wall. 590, 22 L.Ed. 429 (1875), thus making the adequate non-federal ground doctrine necessary to bar advisory opin-

---

7. The majority opinion, however, strongly implied the state interest in its procedural requirement was substantially served by the motion for directed verdict entered at the close of the state's case, which asserted the violation of petitioner's Fourth Amendment rights.

8. Apparently the trial judge in this instance acted as an agent or master for the Mississippi Supreme Court for the purpose of developing the evidence, pursuant to Miss. Code Ann. § 1960 (1942 Recomp.) :

"ISSUES OF FACT MAY BE TRIED
"The Supreme Court may try and determine all issues of fact which may arise out of any appeal before it and be necessary to the disposition thereof, and, to this end, may, by order in each case, prescribe in what way evidence may be produced before it on the issue."

9. See, e. g., Fay v. Noia, supra; NAACP v. Alabama, 357 U.S. 449, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958) ; Fox Film Corp. v. Muller, 296 U.S. 207, 56 S.Ct. 183, 80 L.Ed. 158.

ions. But where the state ground is purely procedural, the Supreme Court will not hesitate to act upon fundamental constitutional right, unless the state's insistence on compliance with its procedural rule serves a legitimate state interest.[10]

It is the plain teaching of Fay v. Noia, supra, that the adequate state ground rule, while limiting appellate review, in no way restricts the power of the federal courts in habeas corpus proceedings, as expressed in these words:

" * * * [I]f because of inadvertence or neglect [a state defendant] runs afoul of a state procedural requirement and thereby forfeits his state remedies, appellate and collateral, as well as direct review thereof in [the United States Supreme Court], those consequences should be sufficient to vindicate the State's valid interest in orderly procedure. Whatever residuum of state interest there may be under such circumstances is manifestly insufficient in the face of the federal policy, drawn from the ancient principles of the writ of habeas corpus, embodied both in the Federal Constitution and in the habeas corpus provisions of the Judicial Code, and consistently upheld by this Court, of affording an effective remedy for restraints contrary to the Constitution. For these several reasons we reject as unsound in principle, as well as not supported by authority, the suggestion that the federal courts are without power to grant habeas relief to an applicant whose federal claims would not be heard on direct review in this Court because of a procedural default

furnishing an adequate and independent ground of state decision." [11]

In short, while "a defendant by committing a procedural default may be debarred from challenging his conviction *in the state courts* even on federal constitutional grounds * * * a forfeiture of remedies does not legitimize the unconstitutional conduct by which his conviction was procured." [12] Our sole inquiry in federal habeas corpus is the constitutionality vel non of the detention complained of; the only jurisdictional prerequisite is detention simpliciter. The duty devolves upon this court, in the exercise of its Great Writ jurisdiction, to examine the basic question of whether that detention offends the Constitution and laws of the United States, notwithstanding the judgment of the state courts.

### III.

### THE LEGALITY OF THE SEARCH; WAIVER OF FOURTH AMENDMENT VIOLATION

While the Mississippi Supreme Court has consistently held the search in this case to be unlawful, we conceive it as our duty under Fay v. Noia to make an independent examination of this question, guided by the applicable decisions of the federal courts interpreting the Fourth Amendment as it relates to warrantless search of an accused's automobile, made on the private property of the defendant and outside his presence.

It is well established that an automobile has the status of a house, so far as the protection of the Fourth Amendment is concerned,[13] subject to

---

10. Henry v. Mississippi, supra, 379 U.S. at 447–448, 85 S.Ct. 564, 13 L.Ed.2d at 412, 413.

11. Fay v. Noia, supra, 373 U.S. at 433–434, 83 S.Ct. at 846, 13 L.Ed.2d at 866.

12. Fay v. Noia, supra, 372 U.S. at 428, 83 S.Ct. at 843, 13 L.Ed.2d at 862.

13. The Fourth Amendment to the Constitution of the United States provides that:

"The right of the people to be secure in their person, houses, papers and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

certain limitations arising from its mobility.[14] While it was once settled law that evidence obtained by an unreasonable search, if otherwise pertinent to the issue, was not rendered inadmissible because of the unlawful manner in which it was obtained, see, e. g., Boyd v. United States, 116 U.S. 616, 6 S.Ct. 524, 29 L. Ed. 746 (1886), the United States Supreme Court, in Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081, held that the fruits of an unconstitutional search were inadmissible in state prosecutions, thus making applicable to the states under the Fourteenth Amendment the exclusionary rule of the Fourth Amendment.

█ The record in this case does not reveal that Officer Collins had a search warrant when he went to the Henry residence to examine the interior of the automobile. However, we need not dwell upon that factual question, for a warrantless search of an automobile is not per se unreasonable. The Supreme Court of the United States held in Berger v. New York, 388 U.S. 41, 83, 87 S. Ct. 1873, 1895, 18 L.Ed.2d 1040 (1967) that:

"* * * [A] search and seizure without a warrant and even without authorization of state law, can nevertheless, under all the circumstances, be 'reasonable' for Fourth Amendment purposes."

So, what we are concerned with is "not whether it is reasonable to procure a search warrant, but whether the search was reasonable." United States v. Rabinowitz, 339 U.S. 56, 66, 70 S.Ct. 430, 435, 94 L.Ed. 653 (1950).

The Court of Appeals for the Fifth Circuit held in Barnett v. United States,

384 F.2d 848, 859 (5 Cir. 1967) rehearing denied 391 F.2d 931 (Judge Gewin dissenting) that:

"There can no longer be any doubt that the Fourth Amendment's requirement of reasonableness demands that a valid search warrant be obtained prior to a search unless the situation comes within one of the 'carefully defined classes of cases' constituting exceptions to the general warrant requirement. * * * The burden is on one invoking an exception to the warrant requirement to produce facts bringing the case within the exception."

█ As we read *Barnett*, the exceptional circumstances excusing the issuance of a warrant are: 1) when the vehicle searched is in motion; 2) when the officers have probable cause to believe the vehicle contains contraband subject to search; and 3) when it is impracticable to secure a warrant because the vehicle can and may be removed from the jurisdiction. We find none of these in this case. Therefore, the search was not justified unless it was incident to petitioner's arrest. Barnett v. United States, supra, at 860.

The United States Supreme Court held in Preston v. United States, 376 U.S. 364, 367, 84 S.Ct. 881, 883, 11 L.Ed.2d 777 (1964), that:

"Once an accused is under arrest and in custody, then a search made at another place, without a warrant, is simply not incident to the arrest."

Although the courts have generally upheld automobile searches conducted contemporaneously with arrest [15] and invalidated those made remote in time and

---

14. See, e. g., Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925); Gambino v. United States, 275 U.S. 310, 48 S.Ct. 137, 72 L.Ed. 293 (1927); Henry v. United States, 361 U.S. 98, 80 S.Ct. 168, 4 L.Ed.2d 134 (1959); United States v. Greer, 297 F.Supp. 1265 (N.D.Miss. March 28, 1969).

15. See, e. g., United States v. Jones, 340 F.2d 913 (7 Cir. 1965); Welch v. United States, 361 F.2d 214 (10 Cir. 1966); United States v. Gorman, 355 F.2d 151 (2 Cir. 1965).

location from the arrest,[16] they have differed in intermediate situations.[17]

 Here, the warrantless search was conducted in the driveway of petitioner's home some two hours after the arrest, outside his presence, and was unrelated to the offense for which he was arrested. In order to meet the test or "reasonableness", the search must be closely related to the reason for the defendant's arrest, and that criterion was not met here. Therefore, the search was unreasonable and evidence obtained therefrom rendered inadmissible unless there was consent thereto.

We are thus brought to consider the question whether petitioner's Fourth Amendment rights were effectively waived when his wife permitted Collins to examine his automobile without warrant. Although first raised by the United States Supreme Court in Amos v. United States, 255 U.S. 313, 41 S.Ct. 266, 65 L.Ed. 654 (1920), this specific point was pretermitted, because the record showed implied coercion upon the wife by the officers. Being without a deliverance from the Supreme Court, the lower federal tribunals have differed on this issue,[18] but the unequivocal, unmodified rule in the Fifth Circuit, as expressed in Cofer v. United States, 37 F.2d 677, 679 (5 Cir. 1930), is that a "wife [is] without authority to bind her absent husband by waiving a legal warrant or consenting to an unauthorized search." See also United States v. Greer, supra.

 In the case at bar, Mrs. Henry's permission was obtained under coercion clearly implied from the circumstances disclosed by the evidence. But in the absence of coercion, expressed or implied, her consent, given without authority from petitioner for waiver of his Fourth Amendment rights—and no such authority has been suggested here —is a nullity. Because of the total circumstances shown by the undisputed evidence, the only conclusion inevitably to be reached is that the search was unreasonable, and evidence obtained as a result thereof—the testimony of Officer Collins concerning his search as previously detailed—was constitutionally tainted and inadmissible. Supreme Court decisions "leave no doubt that the federal habeas remedy extends to state prisoners alleging that unconstitutionally obtained evidence was admitted

16. See, e. g., Westover v. United States, 342 F.2d 684 (9 Cir. 1965) ; Smith v. United States, 118 U.S.App.D.C. 235, 335 F.2d 270 (1964).

17. In Barnett v. United States, supra, 384 F.2d at 860, is found the following collection of cases:

United States v. Cain, 332 F.2d 999 (6th Cir. 1964), [held invalid a search of a car taken to police headquarters, conducted about two hours after the arrest] ; Sisk v. Lane, 331 F.2d 235 (7th Cir. 1964), [search of car towed to police headquarters violated *Preston* although conducted immediately after arrival]; United States v. Nikrasch, 367 F.2d 740 (7 Cir. 1966), [invalidated search at police headquarters made eight hours after arrest] ; Arwine v. Bannan, 346 F.2d 458 (6th Cir. 1965), [upheld search at police headquarters where defendant, after arrest, had remained in car while it was being driven to headquarters and the search was begun immediately upon arrival at the station].

18. The Court of Appeals for the Eighth Circuit held in Roberts v. United States, 332 F.2d 892, 895 (8 Cir. 1964), that:

"Whether the Fourth Amendment protection against unreasonable searches and seizures can in effect be waived by the consent of one's spouse to enter and search premises jointly occupied and controlled by husband and wife was appropriately regarded by the lower court as a 'serious question' and a 'close one.' * * * Without the benefit of a Supreme Court clarification of the issue, those federal courts which have considered the question have taken divergent positions. Compare, e. g., Stein v. United States, 9 Cir., 1948, 166 F.2d 851, 854–5, certiorari denied, 334 U.S. 844, 68 S.Ct. 1512, 92 L.Ed. 1768, and United States v. Sergio, D.C.N.Y., 1937, 21 F. Supp. 553 [holding that a wife may waive her husband's Fourth Amendment rights], with Cofer v. United States, 5 Cir. 1930, 37 F.2d 677, 679, and United States v. Rykowski, D.C.Ohio, 1920, 267 F. 866, 871."

against them at trial." [19] Before a federal constitutional error may be deemed harmless, "the court must be able to declare a belief that it was harmless beyond a reasonable doubt." Chapman v. California, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705, 710–711 (1967). The use of Collins' testimony concerning his inspection of the car interior was prejudicial to petitioner and, in reasonable probability, it contributed to his conviction. That other, independent evidence adequate to convict might be present in the record cannot save the conviction. Under no proper view may it be said that the State's knowing use of unconstitutionally obtained evidence was ratified or "cured" by petitioner's subsequent efforts at the trial to overcome its damaging effects.

## IV.

### DELIBERATE BY-PASSING OF STATE REMEDY

The Attorney General on behalf of the state, strongly contends that even under the rigorous doctrine of Fay v. Noia, petitioner, through his counsel, has deliberately by-passed the orderly procedure of the Mississippi court and in so doing has forfeited state court remedies under conditions barring his relief in federal habeas corpus. Our discretion in this regard is a "limited" one and may

not rest upon "legal fictions".[20] No waiver of federal claim may be deemed to have resulted in the absence of "an intentional relinquishment or abandonment of a known right or privilege."[21]

That a determination has been made by the Mississippi Supreme Court that petitioner waived his federal claim is not binding upon us, for waiver affecting his federal right is, in itself, a federal question. Rice v. Olson, 324 U.S. 786, 65 S.Ct. 989, 89 L.Ed. 1367 (1945); Fay v. Noia, supra.

State factual determinations "not fairly supported by the record cannot be conclusive of federal rights." [22] And, the federal court is compelled to consider "evidence crucial to the adequate consideration of the constitutional claim * * * not developed at the state hearing," unless such omitted evidence was directly attributable to the inexcusable neglect of petitioner.[23] Thus, the evidence developed at the State trials and also on evidentiary hearing is to be measured by the controlling federal standard for ascertaining waiver, that is, "an intentional relinquishment or abandonment of a known right or privilege." To show waiver in these terms requires a high quality of proof, with every reasonable presumption indulged against waiver.[24] A federal right may not be

---

19. Kaufman v. United States, 394 U.S. 217, 89 S.Ct. 1068, 22 L.Ed.2d 227, March 24, 1969, Slip Opinion, p. 8. "See, e. g., Mancusi v. DeForte, 392 U.S. 364, [88 S.Ct. 2120, 20 L.Ed.2d 1154] (1968); Carafas v. LaVallee, 391 U.S. 234, [88 S.Ct. 1556, 20 L.Ed.2d 544] (1968); Warden, [Md. Penitentiary] v. Hayden, 387 U.S. 294, [87 S.Ct. 1642, 18 L.Ed.2d 782] (1967); see also Henry v. Mississippi, 379 U.S. 443, 452, [85 S.Ct. 564, 570, 13 L.Ed.2d 408] (1965)." *Kaufman* expanded the rule to apply to federal prisoners, cognizable in a § 2255 proceeding.

20. Fay v. Noia, 372 U.S. 391, 438–439, 83 S.Ct. 822, 9 L.Ed.2d 837.

21. Fay v. Noia, supra, 372 U.S. 391, 438–439, 83 S.Ct. 822; Johnson v. Zerbst,

304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461, 1466 (1938).

22. Townsend v. Sain, 372 U.S. 293, 316, 83 S.Ct. 745, 759, 9 L.Ed.2d 770, 787 (1963). Accord, 28 U.S.C. § 2254(d) (8).

23. Townsend v. Sain, supra, 372 U.S. 293, at p. 317, 83 S.Ct. at p. 759.

24. Johnson v. Zerbst, supra, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023:
"* * * It has been pointed out that 'courts indulge every reasonable presumption against waiver' of fundamental constitutional rights and that we 'do not presume acquiescence in the loss of fundamental rights.' A waiver is ordinarily an intentional relinquishment or abandonment of a known right of privilege."

deemed waived by invoking presumptions in favor of waiver.[25]

■■■ The record does not show any personal conduct on the part of petitioner at trial disentitling him to the relief he now seeks or which would make it offensive to notions of equity. There is no credible evidence that petitioner either requested his counsel to waive his Fourth Amendment rights or that he personally participated in any decision to do so before or at any stage of the trial in county court. Indeed, the State, at the habeas hearing, stipulated upon the record that petitioner, himself, had not consciously or knowingly waived his constitutionally protected right. We need not consider to be dispositive of the case the undisputed fact that petitioner

did not consult with his attorneys or the State's concession of no personal waiver,[26] because the evidence fails to show that petitioner's counsel, merely by not objecting to the incompetent evidence when it was offered—without more—deliberately by-passed the orderly procedure of the state court because of strategic, tactical or like reasons. It is to be noted that petitioner's attorneys did not agree, or state affirmatively *that they had no objection to, the incompetent testimony*. Their failure to object at time of offer was "deliberate" only in the sense that they conceived the close of the state's case to be the first appropriate time to make the Fourth Amendment objection for the purpose they intended— to have the trial judge direct a verdict for petitioner [27] The theory behind the

25. It is apparent that the Mississippi Supreme Court at 198 So.2d 218, viewed the possibility of strategic waiver combined with curious conduct of counsel at the moment of introduction of evidence was so enshrouded with an aura of suspicion as to shift the presumption to petitioner for explanation of the equivocal circumstances:

"We find as a fact that the State met the burden of proving that defendant's counsel deliberately waived objection to the evidence as a strategic move. *In the absence of any attempt whatever to rebut the compelling inference that the failure to object was deliberate, our finding is that there was a waiver.* The State produced all the evidence it had, and that evidence points clearly to a 'waiver.' All evidence to the contrary is within the sole possession of defendant and his counsel. They have not been willing to reveal what really took place at defendant's end of the counsel table. They should not now be heard to say that there was no waiver." (Emphasis added)

26. While Brookhart v. Janis, 384 U.S. 1, 86 S.Ct. 1245, 16 L.Ed.2d 314 (1966), holds that counsel's waiver of his client's constitutional rights is ineffective when made against his desires, it does not hold that no such waiver may be effectuated, for whatever purpose, without the defendant's acquiescence. Moreover, the Supreme Court specifically held in this case, 379 U.S. at 451–452, 85 S.Ct. 564, 13 L. Ed.2d at 415, that counsel may effectuate a waiver of objection to inadmissible evidence, if done as a matter of trial strat-

egy, although the decision to do so was not participated in by petitioner. It may be that neither *Brookhart* nor *Henry* is applicable here, as both were direct review cases, and that Fay v. Noia, giving sweeping effect to the federal habeas statute, requires that any waiver of constitutional rights be that of the accused himself. The Court of Appeals for the Seventh Circuit held, however, in Nelson v. People of State of California, 346 F.2d 73, 81 (9 Cir. 1965), that " * * * Henry limits Fay v. Noia at least to this extent—that it stands for the proposition that counsel's decision, although made 'without prior consultation with an accused,' to by-pass the contemporaneous-objection rule as part of trial strategy, will nevertheless 'preclude the accused from asserting constitutional claims.' "

27. Petitioner's motion for directed verdict is as follows:

"Atty Carter: We're going to make a motion, your Honor, for a directed verdict in this case. We are going to base our motion on several grounds. First, we think that this whole process by which this defendant was brought or attempted to be brought into the jurisdiction of this Court is illegal and void. There is nothing in the record in this case to show that the warrant that was issued against this defendant was based upon—it must be based in this state and any other state on an affidavit or a proper complaint by any party. True, there is some testimony that some affidavit was made, and the complaining witness said so, but in the record in this case which is before the

motion for directed verdict, insofar as it related to the ground of unlawful search and seizure, was obviously based upon a misconception of state law, viz: that to sustain a prima facie case of guilt of an offense having a sexual connotation required corroborating evidence which was then lacking, apart from that furnished by Collins' unauthorized search of the automobile. The prosecution did not have to produce supporting evidence, in aid of Eilert's testimony.[28]

Here, the error of counsel was on the side of giving to the Fourth Amendment violation a greater thrust than it deserved—to require the acquittal of petitioner. To maximize the importance of a right beyond its just proportion does not indicate waiver of a claim, but rather the antithesis of waiver. Nevertheless, objecting to unconstitutionally acquired evidence at the wrong time and for the wrong purpose is not tantamount to waiver unless it was done as a matter of trial strategy, and there is an absence of evidence that such here

occurred. Neither mistake, nor ignorance, nor inadvertence of counsel may constitute a knowing and conscious waiver of a federal constitutionally protected right. Granting that, at first blush, counsel's equivocal conduct during Collins' testimony "suggested" a "possible waiver", the State, neither on remand to the Bolivar County Court nor here, has offered more than innuendo which, under the Fay v. Noia rule, falls short of what is required to overcome the presumption against waiver of a fundamental constitutional right. This remains true even if no credit is given to defense counsel's explanation, as previously detailed, for the "standing up" and "sitting down" at counsel table while Collins was testifying, nor can the State's "challenge" originally set forth in the Suggestion of Error to defense counsel shift to petitioner the burden of furnishing an adequate explanation for the conduct of his attorneys in not objecting to the evidence in compliance with the State's procedural rule. No substantial consideration has been shown by re-

---

Court, no such affidavit is present and there is a verification from the Justice of the Peace that no such affidavit is present in this case; therefore, we contend that the warrant under which this defendant was subjected to arrest was illegal and without force and effect. Secondly, we contend that the warrant having been issued and the testimony of this Mr. Collins on the stand to the effect that *after he had placed this man under arrest, he then proceeded to go and search his car, and clearly this is a violation of his rights under the Fourth Amendment, and it is unlawful search and seizure so the evidence that they have secured against this defendant is illegal and unlawful.* Finally, we contend that on the basis of these facts that the affidavit under which the defendant was tried before the Justice of the Peace Court * * * based upon the statement that was sworn to by the County Attorney, not on information and belief, but directly that this is void and defective and could give the Justice of the Peace no jurisdiction in this case * * * [A]nd finally, we contend that the State has failed to prove beyond a reasonable doubt to any extent to implicate this man in this case. Now on these basis [sic] we contend that this whole

process is illegal and void, and that it has permeated and contended [sic] the whole process insofar as the jurisdiction of this Court is concerned or jurisdiction over this individual is concerned; therefore, he should be released, and we move for a directed verdict." (Emphasis added)

28. Although Mississippi has required by statute that the complaining witness' testimony be corroborated in prosecutions for certain sexual offenses, see, e. g., Miss. Code Ann. § 2359 [statutory rape] and Miss. Code Ann. § 2374 [seduction], the state courts have specifically held that the requirement of corroboration is confined to those offenses wherein the statute expressly so provides. See Sistrunk v. State, 200 Miss. 437, 27 So.2d 606 (1946), and Holt v. State, 186 Miss. 727, 191 So. 673 (1939). As no corroboration requirement is set forth in the statute under which petitioner was convicted, none was required. Therefore, it was entirely proper, and not an oversight, for the Mississippi Supreme Court, in its original opinion, to reverse and remand, rather than dismiss the prosecution. Cf. Fn. 4, majority opinion, Henry v. Mississippi, 379 U.S. 443, 448, 85 S.Ct. 564, 13 L.Ed.2d 408.

spondent to convince us that petitioner's counsel understandingly and knowingly forewent the privilege of seeking to vindicate petitioner's federal claim in the state court, whether for strategic, tactical or other reasons that can fairly be described as the deliberate by-passing of State procedure.

The State having failed to overcome the presumption against waiver of petitioner's Fourth Amendment rights against unlawful search and seizure, this court can only view petitioner's detention offensive to the Constitution, and he should be freed from any further restraint upon his liability as a result of his conviction and sentence in the County Court of Bolivar County, Mississippi, without prejudice, however, to the State to retry him on the offense with which he has been charged within four months from the date of Order issued herein.