PRISOCK *v.* STATE

No. 42231          June 4, 1962          141 So. 2d 711

*Forrest B. Jackson,* Jackson, for appellant.

*G. Garland Lyell, Jr.,* Asst. Atty. Gen., Jackson, for appellee.

ETHRIDGE, J.

Appellant, Lee V. Prisock, was convicted in the Circuit Court of Hinds County of an attempt to commit

the statutory crime of false pretenses or cheat. He was sentenced to three years in the state penitentiary, and disbarred from the practice of law.

The substantive offense is defined in Miss. Code 1942, Rec., Sec. 2149: "Every person who, with intent to cheat or defraud another, shall designedly, by color of any false token or writing, or by another false pretense, obtain the signature of any person to any written instrument, or obtain from any person any money, personal property, or valuable thing, upon conviction thereof, shall be punished by imprisonment in the penitentiary not exceeding three years, . . ."

Code Sec. 2017 provides that as to "every person who shall design and endeavor to commit an offense", and do any overt act toward its commission, "but shall fail therein, or shall be prevented from committing" it, if the offense is punishable by imprisonment in the penitentiary or county jail, then the attempt to commit the offense shall be punished for a period not greater "than is prescribed for the actual commission of the offense so attempted".

The great weight of the evidence supports the jury's verdict of guilt. Prisock was a practicing attorney in the City of Jackson. Eight accomplices testified for the State, and there was corroborating evidence. The jury was amply warranted in finding that Prisock was the leader and organizer of a group of eight people who attempted to defraud insurance companies by staging a fake or false wreck with automobiles, after having obtained hospitalization insurance on the participants and liability insurance on the offending vehicle. Five of those in on this fraudulent attempt, three women and two men, were from South Carolina. Prisock planned the wreck, decided in advance what doctor to call to treat the alleged victims for their faked injuries, decided on the hospital, and managed the entire event.

The wreck was staged on the Old Canton Road on the night of June 26, 1961, around 9:30 p. m. Pursuant to the plan, Matthews purchased a public liability insurance policy covering him and his 1957 Plymouth. This vehicle, in a farcical way, was broken down and could not run, so the schemers pulled the Plymouth to the scene of the wreck, and then pushed it down-hill into the 1959 Pontiac owned by Doris Webb, thus knocking it into the creek. The three women and the man had previously concealed themselves under the bridge, and, when the car dropped into the creek, they got into it, disarranged it, broke windows, and scratched, cut and beat themselves to simulate injuries. Thereafter they were taken in ambulances to hospitals, and remained there for three to four weeks under treatment of the doctor selected by Prisock. In the meantime they made insurance claims through Prisock, their attorney.

One of the principal organization meetings of these people was held in Prisock's office on Capitol Street on Saturday morning, June 24, 1961. Prisock testified in his own behalf. He denied the testimony of the State's witnesses. He also asserted that he drove to Houston, Mississippi, with his wife and child on that morning, and could not have been at his office for the alleged planning conference with the State's witnesses. His wife testified to the same effect. His wife's parents, of Houston, said the Prisock family arrived at their residence in Houston (about 140 miles from Jackson) after lunch, around 12 noon. Two lawyers who had their offices on the same floor as Prisock testified that they were in their offices that morning, but did not see defendant during that period of time.

Prisock admitted he was at the scene of the wreck shortly after it occurred and while the crowds were gathered. He was at the hospital talking to the people involved in the faked accident within 30-45 minutes. One of Prisock's accomplices in South Carolina testified that

defendant had instructed him to use the name of Bill Jones, instead of his own name, when he telephoned Jackson; and he called Prisock at his office collect from South Carolina, using that assumed name. Prisock denied having received any such call. A representative of the telephone company testified, from written records of that company, that one Bill Jones had made collect telephone calls to the office telephone number of Prisock, and defendant accepted the charges and paid them. There was other evidence corroborating the testimony of the eight accomplices, but it is unnecessary to detail it.

■ ■ In sum, the great weight of the evidence supports the jury's finding that Prisock is guilty of the attempt to commit the crime of false pretenses. Although the testimony of an accomplice should be weighed with care and caution, this is one of those rare cases where there were eight accomplices, and the testimony of each is consistent with that of the others, and with events which we know occurred. Their evidence is reasonable and coherent. Corroborating circumstances support them. The jury was not obligated to accept the alibi evidence offered by defendant. ■ ■ It is the jury's function to pass upon the weight, credibility and worth of such evidence. Cobb v. State, 235 Miss. 57, 108 So. 2d 719 (1959); Passons v. State, 239 Miss. 629, 124 So. 2d 847 (1960).

■ ■ Appellant asserts that the indictment against him was defective, in that either it did not contain as an exhibit the insurance policies nor set out their "purport". Miss. Code 1942, Rec., Sec. 2453 states: "Whenever it shall be necessary to make an averment in an indictment as to any instrument, whether the same consist wholly or in part in writing, print, figures, or characters, it shall be sufficient to describe such instrument by any name or designation by which the same may be usually known, or by the purport thereof, with-

out setting out any copy or facsimile of the whole or any part thereof.''

The indictment is lengthy and well drawn. Setting forth the ''purport'' of the instruments, it states: ''. . . thereafter the said Doris C. Webb, Roy A. Nalley, Karen Tyner and Margaret Neff bought contracts of insurance from the corporations aforesaid to indemnify themselves from loss occasioned by and as a direct result of personal injuries received in automobile accidents, and the said Charles E. Matthews did buy a certain insurance contract of indemnity for loss occasioned by acts of negligence committed by him in the operation of automobiles; . . .''

This complied with the requirements of Sec. 2453. The quoted statement was sufficient to describe the instruments by designation and type and thereby to indicate their ''purport''. Hence it was not error for the court to overrule defendant's objections to introduction in evidence of the insurance policies, which were to be the subject of the fraudulent claims. ▮▮ Section 2453 was designed to remove the hypertechnical requirements of the common law, and at the same time to require sufficient notice of the charge to an accused. ▮▮ When the false pretense is in writing, the writing need not be set out in specific words. It is sufficient to set out the purport of it, unless some question turns on the form or construction of the instrument or some legal description of it is given in the indictment, the accuracy of which may be material for the court to determine (neither exists here). State v. Tatum, 96 Miss. 430, 50 So. 490 (1910). Roberts v. State, 72 Miss. 110, 16 So. 233 (1894), involved an indictment for forgery, which was held insufficient. The charge was forgery of a deed. The indictment did not indicate its date or any other details. *Roberts* is not in point here. State v. Fitzgerald, 151 Miss. 229, 117 So. 517 (1928), concerned an indictment against a supervisor and con-

tractor for making a false claim against the county. The court held that the indictment did not set out the purport of the contract for spreading of gravel on the roads, and it was by virtue of this contract that defendants were charged with false pretenses. Hence in *Fitzgerald* it was impossible to determine whether there had been a false "padding" of the contract without knowing what the contract provided. However, in the instant case the quoted charges as to the stated types of insurance, which are common and well-known, was sufficient to describe the types of the policies, and further details were unnecessary. See 35 C. J. S., False Pretenses, Sec. 42.

Mr. Justice Griffith, in State v. Ingram, 166 Miss. 543, 146 So. 638 (1933), observed that "unessential technicalities as against indictments are fast losing ground"; they are interpreted from the perspective of "the normal and intelligent mind". He further said: "We have passed on in the progress of the times, and we now look upon most of the old decisions which maintained and required the observance of such technical strictness, only with a curious interest; as, for instance, when in an indictment for murder with a deadly weapon it was necessary to allege in which hand the defendant held the weapon."

These comments are pertinent to the instant case. This indictment is necessarily lengthy in order to advise the defendant of the State's charges. It is well drawn and entirely adequate. It was unnecessary for the State to set out in more particular detail the purport of the insurance policies.

■■ Appellant contends that the sentence to three years in the state penitentiary is erroneous, since the indictment charges, he says, a conspiracy to obtain money under false pretenses, and also an attempt to commit the crime of false pretenses. Hence it is argued that the rule of Grillis v. State, 196 Miss. 576, 17 So. 2d 525 (1944) should apply: Where facts which constitute an

offense may fall under either of two statutes, or there is doubt as to which applies, or two different offenses are charged, the case will be referred to the offense which imposes the lesser punishment. We do not agree that this rule applies in the instant case.

Careful examination of the lengthy indictment against Prisock reflects that it charges, in considerable detail, the offense of an attempt to commit the crime of false pretenses, and specifically refers to Code Sec. 2149. The indictment was against eight persons, but Prisock, after severance, was tried separately. The indictment charges that all of these persons ''did willfully, unlawfully and feloniously conspire, willfully scheme and design, and willfully plan in concert with the other'' a false automobile wreck for the purpose of collecting money on insurance policies from insurance companies. It then proceeds to aver the specific overt acts of the attempt. The word ''conspire'', used in conjunction with ''scheme, design and plan'', concerning all of the indictees, was used in a generic sense to show the concert of action of the parties in planning the false wreck, obtaining the insurance, causing the faked accident, and making the claims. A fair construction of the indictment shows that defendant was charged and convicted of the crime of an attempt to commit false pretenses. The indictment did not charge an offense of conspiracy only. It averred overt acts manifestly constituting an attempt to commit the offense.

In summary, the record amply justified the defendant's conviction, and there are no reversible errors. In fact, this record is unusually free from error in a complex criminal issue of this type. The judgment of the circuit court further adjudicated the disbarment of Prisock from the practice of law in the State of Mississippi, as provided by Code Sec. 8667. See Sherman v. State, 234 Miss. 775, 108 So. 2d 205 (1959). This record shows a shameful and inexcusable criminal be-

havior by a former member of the bar. His actions are contrary to every tradition and principle of the legal profession. Unfortunately, because of their noteriety, they tend to overshadow the high moral standards and spirit of public service of those in the profession of law.

Affirmed.

*McGehee, C. J.,* and *Kyle, Arrington* and *Gillespie, JJ.,* concur.