STATE of North Dakota, Plaintiff and Appellee,

v.

Ernest LANG, Defendant and Appellant.

Cr. No. 1077.

Supreme Court of North Dakota.

Nov. 21, 1985.

Gail Hagerty, States Atty., Bismarck, for plaintiff and appellee.

Rosenberg & Baird, Bismarck, for defendant and appellant; argued by LaRoy Baird.

MESCHKE, Justice.

Ernest Lang appeals from a judgment of conviction for criminal mischief in violation of Section 12.1–21–05, N.D.C.C.[1] He contends that he was precluded from introducing evidence that his conduct was justified or excused. We conclude that he was not precluded from introducing competent evidence of a mistake of law and, accordingly, affirm the conviction.

The criminal complaint alleged that Lang willfully damaged one of Basin Electric Cooperative's transmission towers by removing soil at the foundation of the tower and intentionally causing pecuniary loss of more than $100. At trial, the State presented evidence of a final order of condemnation by which Basin Electric obtained a right-of-way easement across Lang's land. The State also presented evidence to establish that Lang admitted digging a nine-foot-deep trench next to one of Basin Electric's transmission towers; that the trench threatened the structural integrity of the transmission tower; and that the cost of filling the trench was $2,496.14.

Lang's conduct stemmed from his belief that the final order of condemnation was invalid because Basin had not paid him all of his costs incurred in defense of the action as required by the order for judgment, and, therefore, he had not been fully compensated for the taking of his property in the condemnation proceeding. The order for judgment in the condemnation proceeding provided for Basin to pay him $4,300 as "just compensation" for the easement and also "reasonable attorney's fees, expert

1. Section 12.1–21–05, N.D.C.C., provides:

"*12.1–21–05. Criminal mischief.*

"1. A person is guilty of an offense if he:

"a. Willfully tampers with tangible property of another so as to endanger person or property; or

"b. Willfully damages tangible property of another.

"2. The offense is:

"a. A class C felony if the actor intentionally causes pecuniary loss in excess of two thousand dollars or damages tangible property of another by means of an explosive or a destructive device.

"b. A class A misdemeanor if the actor recklessly causes pecuniary loss in excess of two thousand dollars or if the actor intentionally causes pecuniary loss of from one hundred through two thousand dollars.

"Otherwise the offense is a class B misdemeanor."

witness fees and costs that were necessary in the defense" of the action.

The State made a motion in limine to exclude testimony or argument concerning the validity of the condemnation order because the matter was res judicata. The trial court granted the State's motion and issued a memorandum decision which provided, in part:

"The various documents and arguments submitted to the Court by the defendant establish his nonacceptance of the district court's determination in the civil condemnation proceeding. *To the extent that his position may constitute a valid defense to the misdemeanor charges limited evidence of his beliefs may be admissible and a determination of all possible evidence in this case could only be made at the time of trial.* The Court does not intend to permit evidence, however, which constitutes a collateral attack on the proceedings and will not permit an effort to relitigate matters which are basically civil in nature in the present misdemeanor criminal proceeding." [Emphasis added.]

At trial, the court stated that it was not going to admit any exhibits into evidence dealing with the condemnation case other than the properly recorded judgment and warned Lang that it was not going to permit evidence for the purpose of raising the issue of whether or not the ultimate judgment in the condemnation case was proper. Lang proceeded pro se and attempted to show that Basin had not paid him "costs" awarded in the condemnation proceeding. Lang questioned Claire Olson, assistant general counsel for Basin about a legal brief written by a counsel for Basin which purported to establish that Basin had not paid him costs in the condemnation proceeding. The trial court warned Lang that it was not going to permit extraneous evidence regarding the condemnation suit. The following questioning ensued:

"Q. (Mr. Lang continuing) As legal counsel for Basin Electric, are you aware of any document that might have been filed—to your knowledge, has Basin conceded that they never paid what the court ordered?

"MISS HAGERTY: Your Honor, I object. That's irrelevent [sic].

"THE COURT: I'm going to permit an answer if you have an answer, Mr. Olson.

"A. [Mr. Olson] What court are you talking about?

"Q. Civil court.

"A. I believe what you are talking about is a contention on your part that on some case that came back on a civil matter on one of the earlier condemnation trials a case that came back on appeal from the North Dakota Supreme Court, you had contended that you did not get your compensation, and I think Mr. Hinman at one time reviewed the transcript of that proceeding to determine what—trying to understand what your contention was on that. I think it was Mr. Hinman's view that when the case came back, the Supreme Court said that you were entitled to your costs on appeal; and the costs on appeal, as we understand them, were relatively nominal costs: costs for filing your transcripts and documents, whatever, in his review of the transcript.

"I don't think he was able to determine whether or not that was paid. It may have been. It may not have been. But, Mike Hinman told you that if you felt you could not get your costs on appeal, to submit your bill, and he would be glad to pay them.

"MR. LANG: I think this has went way out of hand because it's all "think." Would the court reporter repeat the question that I asked.

"MISS HAGERTY: Your Honor, I have to object. Mr. Lang is asking a question that is irrelevent [sic]. Mr. Olson is testifying as to hearsay. The whole questioning and response is inappropriate.

"THE COURT: I'm sustaining it at this point."

On appeal, Lang contends that he was precluded from introducing the legal brief

to establish that his actions were justified or excused because Basin had not paid him certain costs in the condemnation proceeding. Lang contends that if that evidence had been admitted, he would have had support for his testimony that he had not been compensated for the taking of his land as required by law.[2] Lang's argument is apparently based on his belief that the condemnation order was invalid because Basin allegedly had not paid him all of his "costs" in defending the action. Apparently, his belief also stems from a misunderstanding of what is included as "costs." [3]

In support of his position, Lang relies on Section 12.1–05–09, N.D.C.C., which provides:

"*12.1–05–09. Mistake of law.*—Except as otherwise expressly provided, a person's good faith belief that conduct does not constitute a crime is an affirmative defense if he acted in reasonable reliance upon a statement of the law contained in:

"1. A statute or other enactment.

"2. A judicial decision, opinion, order, or judgment.

"3. An administrative order or grant of permission.

"4. An official interpretation of the public servant or body charged by law with responsibility for the interpretation, administration, or enforcement of the law defining the crime."

Title 12.1, N.D.C.C., is modeled after the proposed Federal Criminal Code, and in particular Section 12.1–05–09, N.D.C.C., is identical to Section 609 of the Final Report of the National Commission on Reform of Federal Criminal Laws.[4] Because our stat-

---

**2.** Lang relies on Section 32–15–01, N.D.C.C., which provides:

"*32–15–01. 'Eminent domain' defined—How exercised—'Condemnor' defined.*

"1. Eminent domain is the right to take private property for public use.

"2. Private property shall not be taken or damaged for public use without just compensation first having been made to or paid into court for the owner. In case such property is so taken by a person, firm, or private corporation, no benefit to accrue from the proposed improvement shall be allowed in ascertaining the compensation to be made therefor. Such compensation in all cases shall be ascertained by a jury, unless a jury is waived. The right of eminent domain may be exercised in the manner provided in this chapter.

"3. For the purpose of this chapter 'condemnor' means a person empowered to take property under the power of eminent domain."

**3.** During oral argument to this Court, Lang stated that he had received $4,000 in costs from Basin in the condemnation proceeding and that he had $7,000 in costs and was $3,000 "in the hole." Lang is apparently equating costs with what he believes his just compensation should have been in the condemnation proceeding. Lang's statements reflect a misunderstanding of what is included as "costs." Costs are a creature of statute and can be recovered only to the extent and in the manner provided by law. *United Development Corp. v. State Highway Dep't.*, 133 N.W.2d 439, 22 A.L.R.3d 662 (N.D. 1965). Section 32–15–32, N.D.C.C., provides that in eminent domain actions the court may, in its discretion, award to the defendant "reasonable actual or statutory costs or both, ... costs on appeal, and reasonable attorney's fees

for all judicial proceedings." Provisions relating to statutory costs are found in chapter 28–26, N.D.C.C. At the time that judgment was entered in the condemnation case, Rule 54(e) and (f), N.D.R.Civ.P., provided as follows:

"*(e) Costs.* Costs and disbursements shall be allowed as provided by statute. Costs and disbursements may be taxed by the clerk on two days' notice, and inserted in the judgment. The disbursements shall be stated in detail and verified by affidavit, which shall be filed, and a copy of such statement and affidavit shall be served with the notice. The party objecting to any item shall specify in writing the ground thereof; a party aggrieved by the action of the clerk may file a notice of appeal with the clerk, who shall forthwith certify the matter to the court. The appeal shall be heard upon eight days' notice and determined upon the objections so certified.

"*(f) Notice of retaxation—Procedure.* Costs may be taxed without notice, but when they are so taxed notice of retaxation thereof must be given immediately afterwards as prescribed in subdivision (e), of this rule by the party at whose instance they are taxed. In default of notice of retaxation, the court, upon the application of a party entitled to notice, must direct a retaxation, with costs of the motion to be paid by the party in default. Any sum deducted upon a retaxation must be credited upon the judgment."

The final order of condemnation reflects that Basin paid Lang $6,770.67 for "just compensation and costs."

**4.** See *State v. Leidholm,* 334 N.W.2d 811, 814 (N.D.1983). Section 609 of the Final Report is identical to Section 610 of the Study Draft of the

ute is derived from the proposed Federal Criminal Code, we may look to the draftsmen's official commentaries for insight into the meaning and application of our statute. *State v. Sadowski,* 329 N.W.2d 583 (N.D. 1983). The official commentaries provide, in pertinent part:

"Section 610 [of The Study Draft (see fn. 4)] provides a defense (unless a law expressly provides otherwise) for a person *(a) who has taken affirmative steps to assure himself that conduct in which he proposes to engage will not violate the law* and (b) who, as a result of having taken such steps and in reliance on whatever information he may already have had, believes reasonably and firmly that the conduct will not violate the law. Such a person should not incur criminal liability. With respect to the law, his conduct is not culpable, within the framework of a system of definite positive laws. He has done all that can reasonably be expected to conform his conduct to the law. There is no room for deterrence in such circumstances without either imposing on persons an unreasonable burden to study the law or, in effect, limiting their conduct more broadly than the criminal law intends to do.

"The requirement that a person have 'made a reasonable effort to determine whether the conduct constituted an offense' is intended to insure that the defense will be allowed only if the mistake is reasonable not only with respect to the information which a person has and its source, but also with respect to other information which he could reasonably have obtained from other sources. In addition, it provides to some extent an objective test of the person's good faith. What is a 'reasonable effort' will vary from case to case. It might, for example, be reasonable for a lawyer (or some lawyers) to rely on a published judicial opinion without seeking further advice, but not reasonable for a nonlawyer to do the same." Comment on Mistake: §§ 304 and 610, Working Papers of the National Commission on Reform of Federal Criminal Laws, Vol. 1, P. 139 (1970).[5]

Lang did not present evidence to establish that he had taken any affirmative steps to assure himself that his conduct would not violate the law. Rather, he relied on his own self-selected belief as to the meaning of "costs" and the effect of nonpayment of "costs." Lang attempted to present evidence concerning the contents of a written legal brief from the previous condemnation action, and the trial court ultimately sustained the State's objection to that evidence. Lang made no further offer of proof as required by Rule 103(d),

National Commission on Reform of Federal Criminal Laws. The numbering sequence was changed when the Study Draft became the Final Report.

The mistake of law defense was not adopted in the comprehensive Crime Control Act of 1984 which was "the product of a decade long bipartism effort ... to make major comprehensive improvements to the Federal Criminal laws." 1984 U.S. Code Congressional and Administrative News, p. 3184.

5. We note that the official commentaries explain the "lawyers advice" defense as follows:
"The tentative draft provisions have been substantially changed in the Study Draft. The tentative draft proposed that mistake of law excuse conduct where the actor had made a prior reasonable effort to determine the law and reasonably and firmly believed that his conduct did not constitute an offense, thus permitting a defense based upon the erroneous opinion of a lawyer as to viable law. The Study Draft eliminates this 'lawyer's advice' defense except to the extent that such advice, in fact, incorporates and is coincident with the statements of law in the enumerated matters. Accordingly, the risk of the deliberately created defense and the attendant difficulty of proving complicity of the lawyer is eliminated. Disruption of existing and satisfactory devices for official interpretation of the law (*e.g.,* in the Treasury and Justice Departments in tax and anti-trust matters, respectively) is avoided. The anomaly of submitting questions of law to a jury for a determination as to whether or not the defendant's action as 'reasonable' is likewise avoided. The provision proposed in the Study Draft is modeled after provisions in the Model Penal Code (§ 2.04(3) (P.O.D.1962), and the Illinois Revised Code (c. 38 § 4–8 (1964))." Comment on Mistake: §§ 304 and 610, Working Papers of the National Commission on Reform of Federal Criminal Laws, Vol. 1, P. 138 (1970).

N.D.R.Ev.[6] Nevertheless, Lang asserts that if the legal brief had been admitted into evidence, he would have had support for his testimony that he was not paid his "costs" and that he believed his conduct was justified. However, a legal brief is not a document listed in Section 12.1–05–09, N.D.C.C., upon which Lang could have relied to justify or excuse his conduct. Lang did not present evidence to establish that he had taken affirmative steps to assure himself that his conduct would not violate a statement of the law contained in those documents listed in Section 12.1–05–09, N.D.C.C., and he made no offer of proof to substantiate such a position. He simply relied on his own self-selected beliefs which does not satisfy the requirements necessary to assert a mistake of law as a justification or excuse for conduct.[7]

The record does not support Lang's contention that he was precluded from presenting competent evidence to establish that his conduct was justified or excused because of a mistake of law. Accordingly, the judgment of conviction is affirmed.

ERICKSTAD, C.J., and LEVINE, GIERKE and VANDE WALLE, JJ., concur.

---

**6.** We have said many times that our statutes and rules of procedure may not be modified or applied differently merely because a party not learned in the law is proceeding pro se. *E.g., Lang v. Basin Electric Power Cooperative,* 274 N.W.2d 253 (N.D.1979).

**7.** In *State v. Patten,* 353 N.W.2d 30 (N.D.1984), at 33, we pointed out: "Extending the mistake of law defense to a case involving conduct that is blatantly offensive would subvert the objective of Section 12.1–05–09, N.D.C.C., which is to provide a limited defense to a person who has in good faith sought to determine the lawfulness of an act."