**STATE of North Dakota, Plaintiff and Appellee,**

v.

**James E. BASTIEN and Terry Lee Kopp Bastien, Defendants and Appellants.**

**Cr. No. 870335.**

Supreme Court of North Dakota.

Feb. 10, 1989.

Robert Garold Hoy, States Atty., Fargo, for plaintiff and appellee. Submitted on briefs.

Warren Sogard, Fargo, for defendant and appellant James E. Bastien. Submitted on briefs.

Lundberg, Nodland, Schulz & Lervick, Bismarck, for defendant and appellant Terry Lee Kopp Bastien; argued by Irvin B. Nodland.

LEVINE, Justice.

James Bastien and Terry Bastien appeal from judgments of conviction entered upon a jury verdict finding them guilty of conspiracy to commit theft by deception in violation of Sections 12.1–06–04 and 12.1–23–02, N.D.C.C. We affirm.

The impetus for this criminal prosecution was a civil lawsuit by James against Don Hart in which James claimed that Hart disconnected the electricity to the refrigeration unit on a truck used by James in his retail fish business, Bastien Brothers Interior Fisheries, resulting in the spoilage of 5,742 pounds of fish. Depositions of both James and his wife, Terry, were taken in the civil action.

Believing that there were no fish in the refrigerated truck when the electricity was interrupted and that James and Terry had agreed to manufacture evidence and seek compensation for spoiled fish in that civil lawsuit even though they had suffered no actual loss, the State initiated a criminal investigation. A grand jury returned an indictment charging James with perjury for verifying a false civil complaint, James and

Terry with perjury for false statements in their depositions, and James and Terry with conspiracy to commit theft by manufacturing evidence and agreeing to seek compensation from Hart through the civil lawsuit, knowing that no actual loss occurred. The State presented evidence that James had an employee load a truck with empty boxes and approximately 10,000 pounds of sand and that James unloaded the truck at a Fargo landfill in order to obtain a scale ticket that would support his claim that he had suffered a loss of 5,742 pounds of spoiled fish worth $42,512.40. The weight recited on the scale ticket indicated that James had dumped 10,360 pounds at the landfill, and the State contended that the difference between the weight of the boxes and sand loaded in the truck and the weight stated on the scale ticket established that James had not unloaded spoiled fish at the landfill as he claimed in his action against Hart.

The trial court dismissed the perjury charge against Terry, but the jury found James guilty of perjury for verifying the false civil complaint and making false statements in his deposition. The jury also found James and Terry guilty of conspiracy to commit theft by deception. James and Terry have separately appealed.

James and Terry contend that they have been convicted of the non-existent crime of "theft by civil lawsuit." They argue that, subject only to the penalties of perjury, lawyers and litigants should be free to resort to the courts for an independent and objective evaluation of their claims without fear of being charged with "theft by civil lawsuit." The State responds that an agreement to knowingly manufacture evidence to support a false civil lawsuit is properly chargeable as conspiracy to commit theft by deception under Sections 12.1–06–04 and 12.1–23–02, N.D.C.C.

It is well established that the Legislature has the power to statutorily define the conduct that constitutes a crime and the penalty that may be imposed against offenders. *State v. Gronna*, 79 N.D. 673, 59 N.W.2d 514 (1953); 1 Wharton's Criminal Law, § 10 (14th ed. 1978); 21 Am.Jur.2d, Criminal Law § 11 (1981).

▆ Our Legislature has defined criminal conspiracy in Section 12.1–06–04(1), N.D.C.C.:

"1. A person commits conspiracy if he agrees with one or more persons to engage in or cause conduct which, in fact, constitutes an offense or offenses, and any one or more of such persons does an overt act to effect an objective of the conspiracy. The agreement need not be explicit, but may be implicit in the fact of collaboration or existence of other circumstances."

The elements of criminal conspiracy under that statute are an explicit or implicit agreement to commit an offense and an overt act in furtherance of that agreement. *State v. Lind*, 322 N.W.2d 826 (N.D.1982).

The underlying offense in this case, theft of property be deception, is defined in Section 12.1–23–02, N.D.C.C.:

"A person is guilty of theft if he:

\*    \*    \*    \*    \*    \*

"2. Knowingly obtains the property of another by deception or by threat with intent to deprive the owner thereof, or intentionally deprives another of his property by deception or by threat; ..."

"Deception" means "[c]reating or reinforcing a false impression, including false impressions as to fact, law, status, value, intention, or other state of mind; ... or [a]ny other scheme to defraud." Section 12.1–23–10(2)(a) and (g), N.D.C.C.

▆ Sections 12.1–23–02 and 12.1–23–10, N.D.C.C., are virtually identical to Sections 1732 and 1741 of the Final Report of the National Commission on Reform of Federal Criminal Laws. Because our statutes are derived from the proposed Federal Criminal Code, we may look to the official commentaries of the proposed code for guidance in the meaning and application of our statutes. *State v. Lang*, 378 N.W.2d 205 (N.D.1985). The official commentaries indicate that theft by deception "is very broadly defined to include a wide variety of

different forms in which one can attempt to bilk another of his property." Comment on Theft Offenses: §§ 1731–1741, Working Papers of the National Commission on Reform of Federal Criminal Laws, Volume 2, p. 925 (1970).

The legislative history indicates that theft by deception encompasses a wide variety of conduct. The offense alleged in this case involves an agreement to manufacture evidence to bilk Hart of his property. We believe that the broad definitions of conspiracy, theft of property, and deception evidence a legislative intent that conspiracy to commit theft by deception encompass an agreement to knowingly manufacture evidence to support a false claim in a civil action. *See State v. Lustberg,* 11 N.J.Misc. 51, 164 A. 703 (1933); *People v. Wallace,* 78 Cal.App.2d 726, 178 P.2d 771 (1947); *Prisock v. State,* 244 Miss. 408, 141 So.2d 711 (1962); *Adler v. Sheriff, Clark County,* 92 Nev. 436, 552 P.2d 334 (1976).

We are not persuaded by the defendants' argument that the only penalty for the type of conduct alleged in this case should be a prosecution for perjury. Statutes criminalizing perjury and theft by deception differ in purpose and substance. The theft offenses, including theft by deception, are designed to thwart the variety of schemes to misappropriate property, Comment on Theft Offenses, *supra,* p. 913, while conspiracy focuses on an agreement to commit a crime. *State v. Lind, supra.* However, the crimes of perjury and false statements are designed to penalize a different type of conduct—the making of false statements under oath in an official proceeding. *See* Comment on Perjury and False Statements: §§ 1351–1359, Working Papers of the National Commission on Reform of Federal Criminal Laws, Volume 1, p. 659 (1970). These differences in purpose and conduct between perjury and conspiracy to commit theft by deception, together with the authority of the Legislature to define crimes, undermine the defendants' position that their conduct should be subject exclusively to prosecution for perjury. Nor do we agree with the defendants' argument that criminalizing their conduct unduly chills [1] legitimate civil claims. There is a vast difference between pursuing a legitimately contested claim and agreeing to knowingly use manufactured evidence to support a false claim.

We conclude that an agreement to knowingly manufacture evidence for a civil lawsuit seeking compensation for a claimed loss, knowing that no actual loss occurred, constitutes conspiracy to commit theft by deception under our criminal statutes.

Terry next contends that the trial court failed to follow the procedural requirements of *State v. Lind, supra,* governing the introduction of a hearsay statement [2] made by a co-conspirator, James. The State responds that *Lind* is not applicable to this case because James' out-of-court statement was not offered to prove the truth of the matter asserted and therefore was not hearsay under Rule 801(c), N.D. R.Ev. We agree with the State.

**1.** James and Terry also indirectly argue that the district court refused to admit relevant evidence about James' civil action. However, the evidence cited by James and Terry involved an ex parte court order authorizing Don Hart to confiscate the inventory at Terry's business. That ex parte order was issued in a case involving Hart and Terry and was not part of James' action against Hart. We find no abuse of discretion by the trial court in excluding this evidence.

**2.** In *State v. Lind, supra,* 322 N.W.2d at 838, we adopted the approach taken in *United States v. Bell,* 573 F.2d 1040, 1043 (8th Cir.1978), permitting the introduction into evidence of an out-of-court declaration of a co-conspirator under Rule 801(d)(2)(v), N.D.R.Ev., " 'if the government demonstrates (1) that a conspiracy existed; (2) that the defendant and the declarant were members of the conspiracy; and (3) that the declaration was made during the course and in the furtherance of the conspiracy.' " Before the out-of-court statement may be used, the trial court must explicitly determine that the government has established by a preponderance of independent evidence that the above three facts exist.

We note that in *Bourjaily v. United States,* 483 U.S. 171, 107 S.Ct. 2775, 97 L.Ed.2d 144 (1987), the United States Supreme Court held that, in making a preliminary factual determination under Rule 801(d)(2)(E), F.R.Ev., a trial court may consider the proffered hearsay in determining the existence of a conspiracy and the defendant's participation in the conspiracy.

The statement at issue was included in the testimony of North Dakota Crime Bureau Agent David Lybeck, who described an interview with James:

"Q [Mr. Hoy] With regard to this particular case, would you tell us, if you would, what questions you asked Mr. Bastien and his responses to those questions.

"MR. NODLAND: Your Honor, object on the grounds it's hearsay as to my client.

"THE COURT: Overruled at this point.

"A [Mr. Lybeck] I asked him several questions. After I outlined or summarized our investigation, I asked him about, you know, the sand and whether or not there was empty boxes placed on the truck and—and the sand—whether or not there was sand picked up at Ames Sand & Gravel because, according to our investigation, we determined that there was sand picked up at Ames Sand & Gravel and empty boxes that were hauled to the landfill.

\*       \*       \*       \*       \*       \*

"Q ... What was the question that you put to him?

"A Well, was there or was there not sand put in that truck.

"Q Did he give you an answer?

"A And he said, Yes, but it was used to fill ruts and chuck holes in the lot at The Roughrider store."

■ Rule 801(c), N.D.R.Ev., defines hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." An out-of-court statement is not hearsay if it is not offered to prove the truth of the matter asserted. *State v. Welch*, 426 N.W.2d 550 (N.D.1988); *State v. Jensen*, 418 N.W.2d 776 (N.D.1988). A statement offered to prove it was made is not hearsay. *State v. Welch, supra; see Anderson v. United States*, 417 U.S. 211, 94 S.Ct. 2253, 41 L.Ed.2d 20 (1974).

■ James' out-of-court statement that the sand was used to fill ruts and chuck holes in a parking lot was not offered to prove the truth of what he said. Instead, the statement was offered to prove that James made it so that the State could later prove, by other admissible evidence, that he fabricated the statement to support his claim that he dumped 5,742 pounds of spoiled fish at the landfill. *See State v. Welch, supra; Anderson v. United States, supra.* We therefore conclude that the procedure required by *Lind* was not applicable to James' statement because it was not hearsay.

Terry also argues that there was insufficient evidence to support a guilty verdict against her for conspiracy to commit theft by deception. The State responds that there was sufficient evidence to establish that Terry and James agreed to manufacture evidence to support James' false civil claim against Hart and that an overt act was done in furtherance of that agreement. *See State v. Lind, supra.*

■ In reviewing the sufficiency of the evidence we do not weigh conflicting evidence or judge the credibility of witnesses. *State v. Matuska*, 379 N.W.2d 273 (N.D.1985). We look only to the evidence most favorable to the verdict and the reasonable inferences therefrom to see if there is substantial evidence to warrant a conviction, and we will reverse the decision of the trier of fact only if the record presents no substantial evidence to support the verdict. *Id.*

■ The State introduced the scale ticket from the landfill which, when compared with the weight of the sand loaded on the truck, established that James did not dump spoiled fish at the landfill. The State also presented evidence that Terry helped prepare a false inventory of spoiled fish to document James' claim against Hart. One of James' employees, Steven Bettenhausen, testified that he overheard James and Terry talking about making a list concerning fish and that Terry said that "they should maybe add a few more pounds of the shrimp so that the price would balance against the poundage." Terry's civil deposition was also read into evidence at the criminal trial and, in her deposition, Terry

testified that she helped James load spoiled fish to be taken to the landfill.

Viewing the evidence in the light most favorable to the verdict, we believe that there was sufficient evidence and inferences therefrom to establish that James and Terry agreed to manufacture evidence to support their effort to commit theft by deception. *See State v. Lind, supra.* Moreover, there was also sufficient evidence and inferences therefrom to establish the commission of an overt act in furtherance of that agreement. *Id.* We therefore conclude that there was sufficient evidence to sustain Terry's conviction.

■ Terry also contends that the trial court created an internal inconsistency in this case when it allowed the jury to consider whether she had conspired to commit theft by deception but dismissed the perjury count against her. We disagree. As we have previously noted, perjury and conspiracy to commit theft by deception involve proof of different conduct. Perjured statements may be part of a conspiracy to commit theft by deception but they are not an essential element of that crime. Although the trial court may have concluded that the State did not present any evidence to establish that Terry made false statements in her deposition and therefore was not guilty of perjury, there was sufficient evidence presented to the jury to establish that James and Terry agreed to commit theft by deception and that an overt act was done in furtherance of that agreement. We therefore conclude that the trial court's dismissal of the perjury charge against Terry does not require reversal of her conviction for conspiracy to commit theft by deception.

The judgments of conviction are affirmed.

ERICKSTAD, C.J., and VANDE WALLE, GIERKE and MESCHKE, JJ., concur.